**UNITED STATES of America, Plaintiff,**

v.

**John J. HARRINGTON, Defendant.**

**Crim. No. S–80–157 RAR.**

United States District Court,
E. D. California.

Aug. 3, 1981.

Thomas T. Couris, Asst. U.S. Atty., Sacramento, Cal., for plaintiff.

Howard E. Beckler, Beckler & Stevens, Hollywood, Cal., Clyde Blackmon, Blackmon, Wasserman & Blicker, E. Richard Walker, Federal Public Defender, Sacramento, Cal., Joseph Milchen, Frank & Milchen, San Diego, Cal., Harry E. Hull, Jr., Sacramento, Cal., Dean L. Petersen, Bonham & Petersen, Folsom, Cal., Alan M. May, May, Margolese & King, North Hollywood, Cal., William K. Gamble, Santa Ana, Cal., Howard L. Weitzman, Los Angeles, Cal., Michael Pancer, Pancer & Sherman, San Diego, Cal., L. Stephen Turer, Santa

Rosa, Cal., David Grossman, Pebble Beach, Cal., Michael D. Nasatir, Nasatir, Sherman, Hirsch & Re, P.C., Los Angeles, Cal., for defendant.

## ORDER

RAMIREZ, District Judge.

The above-entitled matter came on regularly for hearing on defendant's motion for suppression of evidence before the Honorable Raul A. Ramirez on July 15, 1981. Having reviewed and considered the memorandum of points and authorities submitted in support of and in opposition to the motion, the respective arguments of counsel, and the matter having been submitted on the pleadings pursuant to agreement of counsel in open court, the Court now makes the following findings and orders in response to defendant's motion for suppression and return of specific property:

The defendant's motion raises a narrow legal question of first impression: the authority of agents of the Customs Service to apply for and execute search warrants in the course of an investigation into possible violation of the drug laws of the United States. The defendant contends that agents of the Customs Service have no such authority while plaintiff contends otherwise.

At the outset, the United States concedes that the authority exercised by the agent of the Customs Service who applied for and executed the instant warrant does not derive from 19 U.S.C. § 1595 and that, in fact, § 1595 has no application to the instant set of facts. The United States has urged, however, that the authority exercised by the agent derives from 26 U.S.C. § 7607 and Rule 41 of the Federal Rules of Criminal Procedure. Section 7607 of Title 26 reads as follows:

> Officers of the customs (as defined in section 401(1) of the Tariff Act of 1930, as amended; 19 U.S.C., sec. 1401(1)), may—
>
> (1) carry firearms, execute and serve search warrants and arrest warrants, and serve subpenas and summonses is-

sued under the authority of the United States, and

> (2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 102(16) of the Controlled Substances Act) or marijuana (as defined in section 102(15) of the Controlled Substances Act) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violations.

Although § 7607 was last amended in 1970, the amendments made therein were of a technical rather than a substantive nature, and as such, absent any other provision of law, § 7607 authorizes the challenged conduct of the agent of the Customs Service who applied for and executed the search warrant under scrutiny herein.

Defendant responds to the argument of the Government by asserting that there is another provision of law that in fact takes away what § 7607 would appear to give. Specifically, the defendant cites the Reorganization Plan No. 2 of 1973, 87 Stat. 1091, 1973 U.S. Code Cong. & Ad. News 3554. As both the text of the Reorganization Plan and the Presidential transmittal memorandum make plain, the purpose of the Reorganization Plan was to remove all investigatory and enforcement functions *vis-a-vis* the drug laws from the Customs Service and to place those functions in the newly-formed Drug Enforcement Administration. The primary reason for the reorganization was the conviction that the enforcement efforts of the United States would be far more effective and efficient were they concentrated in a single agency.

In his transmittal memorandum, the President of the United States observed:

> Seeking ways to intensify our counter-offensive against this menace, I am asking the Congress today to join with this Administration in strengthening and streamlining the Federal drug law enforcement effort.

. . . .

The enforcement work could benefit significantly, however, from consolidation of our anti-drug forces under a single unified command. Right now the Federal Government is fighting the war on drug abuse under a distinct handicap, for its efforts are those of a loosely confederated alliance. . . .

More specifically, the drug law enforcement activities of the United States are not merely in two hands but in half a dozen. . . . The Treasury Department is also heavily engaged in enforcement work through the Bureau of Customs.

. . . .

I therefore propose creation of a single, comprehensive Federal agency within the Department of Justice to lead the war against illicit drug traffic.

This was clearly the understanding of the Congress, see, e. g., 119 Cong.Rec. 18465, *et seq.* (1973).

A secondary reason for the Reorganization Plan No. 2 of 1973 was the need to end an apparently bitter inter-agency rivalry that was actually hampering federal law enforcement efforts. Congressman Horton, speaking on behalf of the Reorganization Plan when it was being debated in the House of Representatives, discussed what he termed "the unhealthy rivalry" between the Bureau of Narcotics and Dangerous Drugs and Customs, 119 Cong.Rec. 18467 (1973). Horton told his colleagues: " . . . we cannot afford any longer the senseless rivalry and duplication between Customs and BNDD," 119 Cong.Rec. 18468 (1973). The record is replete with similar expressions of concern, see, e. g., 119 Cong.Rec. 18471 (1973) (remarks of Congressman Brasco), 119 Cong.Rec. 18472 (1973) (remarks of Congressman Robison).

The final method chosen to end the "senseless rivalry" existing between Customs and BNDD was to take Customs out of the drug law enforcement business. In this regard, the Presidential transmittal memorandum noted that:

The Drug Enforcement Administration would carry out the following antidrug functions, and would absorb the associated manpower and budgets:

. . . .

—Those functions of the Bureau of Customs pertaining to drug investigations and intelligence . . . .

Section 1 of the Reorganization Plan provides:

There are hereby transferred from the Secretary of the Treasury, the Department of the Treasury, and any other officer or any agency of the Department of the Treasury, to the Attorney General all intelligence, investigative, and law enforcement functions, vested by law in the Secretary, the Department, officers or agencies which relate to the suppression of illicit traffic in narcotics, dangerous drugs, or marijuana. . . .

The remarks of the many Congressmen who addressed themselves to the wisdom of Reorganization Plan No. 2 likewise make it plain that it was the understanding of Congress that Reorganization Plan No. 2 stripped Customs of its responsibility and authority to enforce the drug laws of the United States, 119 Cong.Rec. 18465, *et seq.* (1973).

The cases cited by the United States in opposition to the defendant's motion, *United States v. Diezel*, 608 F.2d 204 (5th Cir. 1979), *United States v. Delgado*, 615 F.2d 294 (5th Cir. 1980), are inapplicable inasmuch as neither of the cases discuss the power of the agents of the Customs Service in light of Reorganization Plan No. 2. Furthermore, both such cases fall within the express "border exception" to the deprivation of power effectuated by Reorganization Plan No. 2. See also *United States v. Carter*, 592 F.2d 402 (7th Cir. 1979).

Despite the rather plain language of Reorganization Plan No. 2 of 1973, it is conceivable, as well as arguable, that while Congress intended to shift "primary responsibility" for drug enforcement to the Drug Enforcement Administration, it did not intend to deprive Customs of "secondary authority" so as to invalidate any searches thereafter performed. Such an argument would, however, undercut the clear Execu-

tive and Congressional mandate which sought to end inter-agency rivalry. Furthermore, such an argument would ignore the plain language of the reorganization plan, to say nothing of the purpose and effect of 5 U.S.C. § 907(a). Section 907(a) clearly provides that when a reorganization plan transfers a statutory duty from one agency to another, the transferee agency assumes the duty while the transferor agency relinquishes any and all rights thereto.

In light of the above, the Court concludes that under the present set of facts, the Reorganization Plan No. 2 of 1973 deprives the agents of the Customs Bureau of any responsibility or authority for the enforcement of the drug laws of the United States. The effect of Reorganization Plan No. 2 of 1973 is to amend 26 U.S.C. § 7607 to except from its application the enforcement of said drug laws.

As a side note, the United States argues that Federal Rule of Criminal Procedure 41 provides authority for the search challenged herein. Subsection (h) of Rule 41 provides as follows:

> This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made .... The phrase "federal law enforcement officer" is used in this rule to mean any government agent ... who is engaged in the enforcement of the criminal laws and is within any category of officers authorized by the Attorney General to request the issuance of a search warrant.

■ The Court is of the opinion that Federal Rule of Criminal Procedure 41 is inapplicable to the case at bar. If Rule 41 were itself a grant of authority, there would be no purpose whatsoever for statutes such as 26 U.S.C. § 7607 or 16 U.S.C. § 1a–6. Since the Court is loathe to interpret any federal statute in such a manner as to render other federal statutes mere surplusage, the Court accordingly finds that Federal Rule of Criminal Procedure 41 implements the authority conferred by other sections, but does not in and of itself constitute a general grant of authority.

For all of the reasons as stated herein, the Court grants the motion of defendant HARRINGTON for suppression of all evidence and return of property. In this regard, all items seized from the defendant's home, not plainly contraband, are to be returned to the defendant forthwith.

IT IS SO ORDERED.