UNITED STATES of America, Plaintiff-Appellee,

v.

Leland Wayne LONG, and Benjamin Charles Smith, Defendants-Appellants.

No. 81–7290.

United States Court of Appeals, Eleventh Circuit.

April 30, 1982.

Benjamin Daniel, Joseph A. Fawal, Birmingham, Ala., for Long.

Victor R. Arditti, El Paso, Tex., Don F. Gabriel, Tuscon, Ariz., for Smith.

Michael V. Rasmussen, Holly Wiseman, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

At trial below a jury convicted Benjamin Charles Smith and Leland Wayne Long for violations of criminal drug laws and convicted Smith for violations of criminal aviation laws as well. They appeal. We affirm.

## I. FACTS

We review these facts on appeal in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

In 1979, Smith moved to Georgia, where he lived under an alias and where he and his wife purchased adjoining tracts of land in an isolated rural area. The following year he purchased an airplane, giving his real name but claiming to act for a fictitious business at a non-existent address. Smith never registered the plane in his name or in that of his business. He rented

a hangar at an airport in Talladega, Alabama, giving a fictitious address.

Customs officers, receiving information that Smith was involved in drug smuggling, obtained a court order and surreptitiously installed a transponder in Smith's plane on December 9, 1980. On December 15, an air traffic controller picked up a transponder signal on a plane headed south. A police officer, peering through the doors of Smith's hangar the next day, saw no plane inside. At 1:30 a. m. on December 16, a transponder signal was picked up this time on a plane headed north.[1] The plane circled the area of Smith's land in Georgia for half an hour, then went on to land in Talladega, with two Customs planes in pursuit and landing behind it. A Customs pilot saw a man leaving the plane and shouted to him to halt. The man ran away with a curious, lurching gait. Unable to find the man, Customs agents looked through the windows of the plane—which was Smith's—and saw that the passenger seats had been taken out, that there were large white bundles inside, and that there was a boot in the cockpit.

The agents had received information that a truck with Florida license plates might be used in the smuggling operation. At 4:30 a. m., a truck drove toward the plane, turned, and slowly began to leave the area. Agents were able to see that the truck had a Florida license plate. The agents stopped the truck, ordered appellant Leland Long out of it, read him his rights, and searched him and the truck. The search produced keys to a Holiday Inn motel room into which Long had checked the day before and that was near Smith's land. The search also produced keys belonging to a truck in Smith's hangar and a commercial plane ticket made out to Ben Smith. Long, despite the time of day and even though there were no flights scheduled, stated that he had heard that he might obtain a ride to Florida at the airport. Long also at the time denied knowing the aircraft's pilot.

At dawn searchers found a trail of discarded items in an adjoining field. The items, which included keys to Smith's airplane; a boot matching the one left on the plane; a pilot's license in the name of Charles Smith; a Holiday Inn Matchbook; and paper with map coordinates for a town in Colombia, South America, led to some bushes, where Smith was found hiding. Smith, an amputee, had partially removed his leg prosthesis, had no shoes, and had $2,000 in cash on his person.

Agents searched Smith's plane and hangar after obtaining a search warrant. The plane held 676 pounds of marijuana, with a street value of $270,000; had an auxiliary fuel system allowing a round trip flight to South America without refueling; and contained charts, including one with Smith's fingerprints and a course to Colombia plotted and another with Long's fingerprints. A truck in the hangar contained paper with coordinates for Colombia.

In March 1981, Customs agents located the Georgia property that Smith's wife had owned at the time of the smuggling attempt.[2] The land contained a barn but no residence. Agents walked through a field, looked through an open barn door, and saw two trash cans. Returning the next day with a search warrant, the agents found the trash cans and, inside them, strobe light devices commonly used to signal aircraft making clandestine contraband drops.

At trial, a jury convicted Smith of using a fraudulent airman's certificate in violation of 49 U.S.C.A. § 1472(b), of displaying misleading numerals on his aircraft in violation of 49 U.S.C.A. § 1472(b), of importing cargo not entered on the aircraft manifest in violation of 21 U.S.C.A. § 955, of importing marijuana in violation of 21 U.S.C.A. § 952, and of possession of marijuana with intent to distribute in violation of 21 U.S.C.A. § 841. It convicted Long of aiding and abetting the importation of marijuana in violation of 18 U.S.C.A. § 2 and 21 U.S.C.A. § 841 and of attempting to possess marijuana with intent to distribute in violation of 21 U.S.C.A. §§ 841 and 846.

1. The signals were not identified as specifically coming from Smith's plane.

2. In January 1981, Smith's wife conveyed the property to her sister.

## II.  ISSUES

### A.  Fourth Amendment Concerns

#### 1.  Court Order Authorizing Installation of a Transponder

■ Smith raises several arguments contesting the validity of the court order authorizing installation of a transponder on his airplane.  First, he argues that the order was unreasonable because it authorized installation and monitoring of the beeper for 90 days.  The former Fifth Circuit considered a similar warrant in *United States v. Cady*, 651 F.2d 290 (1981), and ruled that the relevant inquiry was the time during which a signaling device actually was in use, not the maximum time that an order permitted.[3]  Seventeen days of operation the Court held reasonable in *Cady*.  The week of operation in this case we therefore also hold reasonable.

■ Smith next alleges that the information on which the order was based was stale, unsupported, irrelevant, and not reliable, and that it therefore did not provide the probable cause necessary for issuing the order.  Smith faces a difficult task in trying to overturn the order.  It must indeed be based on probable cause, but if a magistrate, using "his own judgment based on the entire picture presented to him and utilizing his common sense" finds probable

cause, " 'his determination is conclusive in the absence of arbitrariness.' " *United States v. Weinrich*, 586 F.2d 481, 487 (5th Cir. 1978) (quoting *Bastida v. Henderson*, 487 F.2d 860, 865 (5th Cir. 1973)), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).  We have reviewed the information forming the basis for the warrant and conclude that the magistrate's assertion that probable cause existed was not arbitrary.[4]

Smith finally asserts that the transponder's weight and radio signal might have made flying his aircraft dangerous.  His contention is utterly without supporting evidence.  We dismiss this argument as frivolous.

#### 2.  Search of Barn

■ Smith contends that Customs agents violated his Fourth Amendment rights when they climbed a fence, entered land formerly belonging to Smith's wife, and looked through the open door of a barn.  The strobe lights found the next day pursuant to a search warrant should, he concludes, have been excluded as evidence at trial.  We reject this contention.  A person can claim the protection of the Fourth Amendment only if he can show some legitimate expectation of privacy in the area or object searched.[5]  The former Fifth Circuit

---

3.  Smith contends that we need not follow former Fifth Circuit case law.  The Eleventh Circuit has, however, adopted the case law of the former Fifth Circuit as its governing body of precedent.  This precedent is binding unless and until overruled or modified by this Court en banc.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

4.  The most important information in the affidavit supporting the application for the court order is a statement by the affiant that an informant who had provided reliable information in the past told him that Smith planned to smuggle marijuana into the country soon.  Smith seems to attack this tip by charging that it could not be credited since there was insufficient indication of the circumstances from which the informant drew his conclusions.  *See United States v. Flynn*, 664 F.2d 1296, 1301–07 (5th Cir. 1982).  Even assuming that Smith's assertion is correct and that the tip could not alone provide probable cause, we still must include it as a factor in determining whether

the magistrate's finding was arbitrary.  *Spinelli v. United States*, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1959); *United States v. Bush*, 647 F.2d 357, 365 (3d Cir. 1981); *cf. Flynn*, 664 F.2d at 1304 (finding of probable cause rests on sum total of layers of information).  The tip, combined with statements in the affidavit noting Smith's earlier arrest for drug smuggling, his purchase of the plane in the name of an apparently fictitious company, and his failure to register the plane, provided sufficient basis for a finding of probable cause.  Having found this information alone sufficient to support the magistrate's finding, we need not consider whether other statements that Smith attacks need be credited.  *See Flynn*, 664 F.2d at 1305–06.

5.  The parties talk of whether Smith had a privacy interest that gave him standing to raise a Fourth Amendment claim regarding the search of the barn.  In *Rakas v. Illinois*, 439 U.S. 128, 138–40, 99 S.Ct. 421, 425–28, 58 L.Ed.2d 387

has held that there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home. *United States v. Williams*, 581 F.2d 451, 453–54 (5th Cir. 1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Brown*, 473 F.2d 952 (5th Cir. 1973); *Hodges v. United States*, 243 F.2d 281, 283 (5th Cir. 1957). There being no residence on the land at issue in the curtilage of which the barn arguably might have been situated, there was no legitimate expectation that Smith or anyone else could claim in the contents of the barn.[6]

3. Search of Long's Person and Truck

■ Long argues that the Customs agents had no probable cause to arrest him at the airport and hence could not justify the search of his person and truck as incident to an arrest. Evidence from that search, he opines, therefore should not have been admitted at trial. We find his argument without merit. The test for probable cause is clear: probable cause exists if facts and circumstances within the knowledge of an arresting officer and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an individual has committed a crime. *See, e.g., United States v. Elsoffer*, 671 F.2d 1294 at 1298 (11th Cir. 1982); *United States v. Preston*, 608 F.2d 626, 632 (5th Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). We believe that the agents, know-

ing that ground crews often help unload contraband drugs from airplanes and that a truck with a Florida license plate might assist in the unloading, had probable cause to arrest Long when they saw him drive up near the plane in question at 4:30 in the morning at a deserted airport near Talladega, Alabama, using a truck with a Florida license plate.

B. Sufficiency of the Evidence

■ Both appellants contest the sufficiency of the evidence for certain convictions.[7] We may overturn the convictions only if, looking at the evidence in the light most favorable to the government, we conclude that a jury necessarily must have entertained a reasonable doubt about appellant's guilt. *See, e.g., United States v. Bulman*, 667 F.2d 1374, 1378 (11th Cir. 1982).

■ Smith first urges that the evidence was insufficient for conviction for use of a fraudulent airman's license because it showed only that he possessed such a license, not that he used it. At the time of his arrest, Smith, however, had no valid license. The evidence easily allows the conclusion beyond a reasonable doubt that Smith flew the plane in the smuggling operation on the night of his arrest. Since he had no valid license at the time of the flight, the further conclusion that he used the fraudulent airman's license as purported authorization for acting as pilot is inescapable.

(1978), however, the Supreme Court stated that standing analysis should be subsumed into a court's substantive Fourth Amendment inquiry. *See also Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *United States v. Frezzo Bros., Inc.*, 602 F.2d 1123, 1130 n.11 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1979); *United States v. John Berhnard Indus., Inc.*, 589 F.2d 1353, 1361–62 (8th Cir. 1979). Although former Fifth Circuit cases still at times talk of standing when considering Fourth Amendment issues, *see, e.g., United States v. Hernandez*, 668 F.2d 824, 826–27 (5th Cir. 1982), *Rakas* indicates that the better approach is to proceed directly to the substance of an appellant's claims, as here.

6. We note that, even if we had found that a legitimate expectation of privacy could have existed in the contents of the barn, it is highly doubtful that Smith himself had such an expectation since, at the time of the search, not even his wife owned the lands on which the barn was situated.

7. Although Smith does not raise sufficiency arguments with regard to all his convictions, we have reviewed the record and have found sufficient evidence for the jury verdicts on every count.

Smith also avers that the evidence shows only that he did not register the plane, not that he attempted to alter its markings, and therefore is not sufficient to convict him for knowingly and willfully displaying false or misleading markings.[8] Because Smith did not register the plane, however, the markings that he displayed unaltered would be misleading since they would lead only to a former owner. A jury could conclude that Smith willfully displayed misleading markings by failing to register the plane in his name.[9]

■■■ Long's contentions concern the sufficiency of the evidence for his convictions for aiding and abetting the importation of marijuana and for attempting to possess marijuana with intent to distribute. To convict for either aiding and abetting or for an attempt to commit a crime, the government must prove association with smuggling activity as something that an individual desired to bring about and that by his actions he tried to make succeed. *E.g., United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1982); *United States v. Cowart*, 595 F.2d 1023, 1051 (5th Cir. 1979); *United States v. Mandujano*, 499 F.2d 370, 372–77 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). The evidence, Long asserts, does not prove those elements. We disagree. The evidence indicates more than mere presence. It shows Long driving up to a plane loaded with marijuana, an hour and a half after the plane had landed, in the dead of night,

at a deserted airport, and with an unlikely alibi explaining his presence. It also shows that Long possessed a key to a truck in Smith's hangar, that inside the truck was paper with coordinates for Colombia, and that one of Long's fingerprints was found on a chart within Smith's plane. These facts prove the requisite criminal intent as well as substantial steps in bringing about the importation of marijuana and in attempting to possess the marijuana with intent to distribute. The evidence was sufficient for Long's convictions.

## C. Trial Conduct

Smith raises several issues concerning actions by the court, by the prosecution, and by his own counsel. We reject all such contentions.

### 1. Severance

■■■ The trial court should have severed the aviation and drug charges, Smith asserts, because they were completely unrelated. Improper joinder of crimes is a question of law, occurs if there is not substantial identity of facts or participants, and is inherently prejudicial. *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978); Fed. R.Crim.P. 8(a). The evidence in this case makes clear that the violations of the aviation laws were in the context of the same smuggling activity, involved almost identical evidence, and had Smith as the central

**8.** A related argument Smith makes is that failure to register is proscribed only under 49 U.S.C.A. § 1403, which 49 U.S.C.A. § 1472(a) states is not a violation subject to criminal penalties; 49 U.S.C.A. § 1472(b), however, specifically imposes criminal penalties on individuals "who knowingly and willfully display[ ] . . . any marks that are false or misleading as to the . . . registration of the aircraft". It was proper for Smith to be found to have violated § 1472(b) in owning an airplane that he willfully did not register and that had markings registered to another owner.

**9.** At oral argument Smith stated that federal regulations allow a purchaser of an aircraft 90 days to register his ownership. Since he did not raise the issue below, we will not recognize it here absent plain error. *United States v.*

*McLeod*, 608 F.2d 1076, 1078 (5th Cir. 1979). We find no plain error. Smith's argument, in any event, is without merit. Section 47.3(b) of 14 C.F.R. states that no person may operate an aircraft eligible for registration unless it has been registered or has temporary authorization. Section 47.31 of 14 C.F.R. does provide 90 days temporary authority to operate an aircraft without registration, but only after a person submits an application for registration. Since Smith never applied for registration, he never had temporary authority to operate an unregistered aircraft. Moreover, under Sections 47.1 and 49.1 of 14 C.F.R. the regulations apply to registration only under 49 U.S.C.A. § 1401, not under the criminal provisions of § 1472(b).

participant. The court was correct in refusing to sever.[10]

## 2. Continuance

Smith argues that the court should have continued his trial because the evidence from the search of the barn was brought up only a few days before trial. Smith did not ask for a continuance, merely protesting the belated search and requesting that the court allow him to postpone his opening statements. We will reverse only for abuse of discretion. *United States v. Tilton*, 610 F.2d 302, 305 (5th Cir. 1980). There was no abuse here.

## 3. Exclusion of Testimony by Smith

At trial Smith began to relate statements made by another individual to him during a telephone conversation. The government objected on hearsay grounds. Smith's counsel—not the court—told Smith not to relate what the other person had told him. Smith now contends that the court, apparently overriding the statements of his own counsel, should have allowed the testimony as evidence of state of mind.[11] We do not see the abuse of discretion that we must observe, *see United States v. Medel*, 592 F.2d 1305, 1314 (5th Cir. 1979), for reversal.

## 4. Prejudicial Prosecution Statement

Smith charges that the government made three false and prejudicial statements: that the Georgia farm on which the strobe lights were found belonged to Smith himself; that Smith's purchase of 210.8 gallons of fuel was "mighty close" to the aircraft's capacity, even though the plane had a capacity in excess of 400 gallons; and that after trial the government stated that Smith could have been convicted for aiding and abetting. Smith's

contentions concerning the prejudice of the last statement we dismiss out of hand. A statement after trial hardly could have prejudiced Smith at trial.[12] For the first two statements, the test for prejudice is whether, taken as a whole in the context of the entire case, the statements prejudicially affected substantial rights of the defendant. *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir. 1977). Viewed in that light, the misstatements were trivial and nonprejudicial.

## 5. Ineffective Assistance of Counsel

Smith alleges that he was denied effective assistance of counsel because counsel failed to call alibi witnesses. This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses. *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981); *United States v. Johnson*, 615 F.2d 1125, 1127 (5th Cir. 1980). There was no Sixth Amendment violation.

## D. Other Issues

## 1. Authority of Customs Agents to Conduct Investigation

Citing a California district court opinion, *United States v. Harrington*, 520 F.Supp. 93 (S.D.Cal.1981), Smith argues that an executive reorganization plan transferred from the Customs Department to the Drug Enforcement Agency all law enforcement functions related to illegal drug trafficking. *See* Reorganization Plan No. 2 of 1973, *reprinted in* [1973] U.S.Code Cong. & Ad.News 3554. He concludes that, since the Customs investigation was therefore beyond the scope of its authority, his conviction should be reversed and the charges against him dismissed. Since this issue was

---

**10.** The district court did sever a count of the indictment charging Smith with willfully and knowingly furnishing to another an altered passport in violation of 18 U.S.C.A. § 1543.

**11.** Smith did testify that the telephone caller had threatened and upset him. He was, there-

fore, able to indicate adequately the effect of the telephone call on his state of mind.

**12.** The statement was also legally correct. *See United States v. Eddy*, 597 F.2d 430, 431 n.3 (5th Cir. 1979).

not raised below we cannot recognize it on appeal absent plain error. *E.g., United States v. McLeod*, 608 F.2d 1076, 1078 (5th Cir. 1979). There was no plain error here; we dismiss the argument.[13]

### 2. Amendments to Indictment

Smith seems to argue that his indictment was amended at trial when he was charged with conspiracy even though the indictment contained no conspiracy count. The jury, however, was neither charged on nor convicted him of conspiracy. He also avers that the indictment's count on willfully displaying misleading identification marks on an aircraft was amended by the bill of particulars, which talked of failure to register the plane. As we stated earlier, however, *see* text at notes 7 & 8, *supra*, by purposefully failing to register the plane Smith could be convicted for willfully displaying misleading identification marks on the plane. The bill of particulars, as is its function, only explained the indictment. *See United States v. Sklaroff*, 323 F.Supp. 296, 315 (S.D.Fla.1971). It did not amend the indictment.

The convictions of Benjamin Smith and Leland Long are AFFIRMED.

**13.** We find the argument of little merit. As Smith's cited case itself indicates, *see* 520 F.Supp. at 95, the reorganization order and accompanying presidential message do not make entirely clear whether the Customs Department was deprived of all drug law enforcement functions, particularly if, as here, a border crossing has occurred. Moreover, the manner in which the executive branch decides to allocate particular law enforcement functions is properly a matter of executive discretion. This Court should not construe any exercise of such discretion as an action intended to deprive a particular agency of all authority to conduct an investigation regarding certain violations of the law. In any event, the DEA had some involvement in the investigation leading to the arrests of Smith and Long, involvement sufficient to allow the investigation not to contravene the reorganization order.