**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nevin M. STEWART, Jr. and Melanie Lee McCall, Defendants-Appellants.**

**No. 81–6070
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 18, 1983.

Rehearing and Rehearing En Banc
Denied May 27, 1983.

Robert Augustus Harper, Jr., Tallahassee and Gainesville, Fla., for defendants-appellants.

Kenneth W. Sukhia, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellants Nevin M. Stewart, Jr. and Melanie Lee McCall were arrested after a Customs Intercept Aircraft followed their plane from sixty miles southeast of the Bimini Islands to an isolated airstrip at Cross City in North Florida. Upon landing, a customs officer searched appellants' plane and discovered approximately 2000 pounds of marijuana. Stewart and McCall subsequently were charged in a four-count indictment with conspiring to possess with intent to distribute more than 1,000 pounds of marijuana (Count I—21 U.S.C. §§ 841, 846), possession with intent to distribute more than 1,000 pounds of marijuana (Count II—21 U.S.C. § 841 and 18 U.S.C. § 2), conspiring to import marijuana (Count III—21 U.S.C. §§ 952, 963), and importation of marijuana (Count IV—21 U.S.C. § 952(a), and 18 U.S.C. § 2). Both were found guilty of Counts I, III, and IV by a jury of thirteen.

Appellants' principal argument on appeal is that their constitutional right to a trial by a jury of twelve persons was violated when attorneys for both sides stipulated to allow a discharged alternate juror to become a voting member of the jury panel. During appellants' trial, at the conclusion of the court's instructions, the two alternate jurors were discharged. Nevertheless, one of the discharged jurors proceeded into the jury's room and participated in the deliberations. When the Marshall later reentered the room to take meal orders, the "thirteenth" juror was discovered. At that point, the prosecutor suggested that the alternate be discharged once again and removed from the jury room. The court acknowledged that a second discharge was possible, but also noted that the remaining jurors would then have to be questioned to determine if the intruder had affected either deliberations or the verdict. Defense attorney then announced, "I will stipulate to a verdict of 13," Record, Vol. VII, at 284, and the following discussion took place:

The Court: Well, it's a simple task if both sides stipulate to a verdict of 13.

Mr. Sukhia [Prosecutor]: Okay.

The Court: Let the record show that counsel for the defendant and counsel for the government stipulated to a verdict of 13 and stipulated to any irregularity, to

waive any irregularity by reasons of the presence of the alternate juror, the 13th juror. Is that an accurate statement? Mr. Corry [Defense Counsel]: Yes, sir, Your Honor. I would like the jury to be instructed it will have to be a verdict by 13.

*Id.* at 285.

Appellants claim a constitutional right to a jury of exactly twelve persons on the basis of *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930). They argue further that because a jury of twelve is a constitutional requirement, their attorney did not have the power to waive their rights by stipulating to a jury of thirteen without appellants' consent. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that waiver of a constitutional right must be an intentional relinquishment or abandonment of a known right).

In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), however, the Supreme Court indicated that a twelve-person jury is not a constitutional requirement. Thus, the Court upheld a Florida decision to permit six-person rather than twelve-person juries. After *Williams,* it is doubtful that the Constitution mandates that federal criminal juries be composed of exactly twelve individuals. *See United States v. Spiegel,* 604 F.2d 961, 965 n. 9 (5th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Nevertheless, even if the number twelve is constitutionally dictated, the intentional and knowing waiver standard articulated in *Zerbst* does not apply when an attorney makes a tactical decision with constitutional implications. *Id.; see also Estelle v. Williams,* 425 U.S. 501, 508 n. 3, 96 S.Ct. 1691, 1695 n. 3, 48 L.Ed.2d 126 (1976); *United States v. O'Looney,* 544 F.2d 385, 392 n. 5 (9th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). For example in *Spiegel,* defense counsel requested that a trial continue with only eleven jurors after one member of the panel was dismissed due to an illness. Like Stewart and McCall, defendants in *Spiegel* argued that

their attorney lacked the authority to waive their constitutional right to a twelve-person panel. The former Fifth Circuit disagreed:

*Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), in holding that the fourteenth amendment does not require *states* to provide twelve-person juries, cast doubt via broad dicta on whether the Constitution mandates twelve-person juries in federal court and perhaps overruled *Patton* sub silentio. Even if the number twelve is still constitutionally dictated, however, we find numerous circumstances in which actions by counsel to waive constitutional rights have bound their clients. *See, e.g., Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (waiver by counsel of fourteenth amendment guarantee that accused cannot be compelled to stand trial in prison garb); *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (deliberate choice by counsel to delay objection to tainted evidence may waive defendant's rights under the fourth amendment); *Winters v. Cook,* 489 F.2d 174 (5th Cir.1973) (intentional strategic waiver by counsel of defendant's right to object to racial composition of jury) ....

Only where there is evidence of fraud or gross incompetence by an attorney—which is not an issue here—or where "an inherently personal right of fundamental importance is involved," *id.* at 178, does the law require defendant to personally waive his or her rights. *Horne [v. United States,* 264 F.2d 40 (5th Cir.), *cert. denied,* 360 U.S. 934, 79 S.Ct. 1460, 3 L.Ed.2d 1549 (1959) ], even before *Williams v. Florida,* indicated that defendants sometimes could speak through counsel in waiving the right to twelve-person juries. This in no way suggests that counsel may waive the right to a *jury trial* for their clients.

604 F.2d at 965 n. 9.

■ The waiver of a twelve-person jury by appellants' counsel clearly falls into this category of tactical decisions. By requiring a unanimous verdict of thirteen instead of twelve, counsel sought to increase his

clients' chances of acquittal. We therefore hold that counsel properly waived any rights appellants may claim to a twelve-person jury.[1]

■ Appellants' second argument challenges the search conducted by the United States Customs Department as beyond the scope of the agency's authority. Citing *United States v. Harrington,* 520 F.Supp. 93 (E.D.Cal.), *aff'd on rehearing,* 524 F.Supp. 292 (1981), rev'd, 681 F.2d 612 (9th Cir. 1982), they maintain that an executive reorganization plan transferred all law enforcement functions relating to illegal drug trafficking from the Customs Department to the Drug Enforcement Agency (DEA).[2] *See* Reorganization Plan No. 2 of 1973, *reprinted in* 1973 U.S.Code, Cong. & Ad.News 3554. If the Customs Department was not acting within the authority, appellants conclude that the marijuana found on board their plane should have been suppressed.

This argument also was made in *United States v. Long,* 674 F.2d 848 (11th Cir.1982), but was rejected because the defendant in *Long* failed to raise the issue at trial. *Id.* at 855–56. Nevertheless, the court stated in dicta,

> We find the argument of little merit. As [*United States v. Harrington*] ... itself indicates, *see* 520 F.Supp. at 95, the reorganization order and accompanying presidential message do not make entirely clear whether the Customs Department was deprived of all drug law enforcement functions, particularly if, as here, a border crossing has occurred. Moreover, the manner in which the executive branch decides to allocate particular law enforcement functions is properly a matter of executive discretion. This Court should not construe any exercise of such discretion as an action intended to deprive a particular agency of all authority to conduct an investigation regarding certain violations of the law.

674 F.2d at 856 n. 13. We agree. The purpose of the reorganization plan was "[t]o reduce the possibility that illicit drugs will escape detection at ports-of-entry because of divided responsibility." 1973 U.S.Code, Cong. & Ad.News at 3557. Notwithstanding the executive's intent to streamline enforcement activities, after reorganization Customs retains the responsibility for "inspection of all persons and goods entering the United States," and "interception of contraband being smuggled into the United States." *Id.* The effect of the reorganization was only to require customs officials to turn over investigation and enforcement responsibilities to the DEA and the Attorney General. *Id.*

■ In the present case, the Customs Department did not exceed the scope of their authority. The customs agent simply intercepted the smuggled contraband and turned it over to the DEA.[3] Appellants were searched upon their arrival into the country at what may be considered the functional equivalent of the border. *See United States v. Richards,* 638 F.2d 765, 771–72 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981); *United States v. Walters,* 591 F.2d 1195, 1198 (5th Cir.), *cert. denied,* 442 U.S. 945, 99 S.Ct.

---

1. Appellants' reliance on *United States v. Watson,* 669 F.2d 1374 (11th Cir.1982) is misplaced. In *Watson,* the district court neglected to discharge an alternate juror who subsequently was elected foreman. *Id.* at 1389. After the mistake was discovered, the alternate juror was discharged. *Id.* The district court, however, conducted only a limited inquiry, and refused defense counsel's request for a more detailed evidentiary hearing to discover any impact the alternate may have had on the jury's deliberations. *Id.* at 1390. On appeal, the court agreed that an evidentiary hearing was appropriate because the alternate had invaded the sanctity of the jury and may have affected the verdict. *Id.* at 1391–92. *Watson,* however,

did not involve any stipulation or consent to allow the alternate to participate in deliberations.

2. On appeal the Ninth Circuit reversed, holding that "a court should not automatically suppress evidence seized by an officer who, for some technical reason should not have conducted the search." *Harrington,* 681 F.2d at 615.

3. *Harrington,* in contrast, recognized that customs agents have no authority to apply for and execute a search warrant of an individual already in the United States pursuant to a narcotics investigation. *See* 520 F.Supp. at 94.

2892, 61 L.Ed.2d 317 (1979). The search therefore was within the scope of Customs' authority.[4] *See United States v. Carter,* 592 F.2d 402, 405–06 (7th Cir.), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979).

■ Finally, appellants claim that they should be resentenced under Count I because the Government failed to prove that more than 1000 pounds of marijuana was found aboard their aircraft. Their objection is based upon the fact that only six of the 146 bales found on board the plane were introduced at trial, and only eleven of the bales were sampled and tested. We find appellants' position without merit. The DEA agent testified that the eleven samples were taken randomly as the bales were unloaded from the aircraft pursuant to standard operating procedures. The customs officer also testified that 146 bales were removed from the aircraft, weighed and sampled. Moreover, defendants admitted that they knew their cargo was marijuana. Their sole defense was lack of intent.[5] For these reasons we

AFFIRM.

4. Appellants attempted to prove that the detection of their aircraft was made possible by an electronic device attached to their airplane as part of an ongoing investigation by the Customs Department. This was rejected by the district court as without merit:

The Defendants presented absolutely no evidence supporting their allegations that their apprehension was due to the use of an illegally placed electronic tracking device, that the Coast Guard had probable cause to arrest in time to obtain a warrant or that they were forced into the United States. The evidence showed the search in this case was a legitimate border search at a functional equivalent of the border.

Record, Vol. 1, at 101.

5. Appellants claim that unfriendly Colombians with machetes and machine guns forced them to load their plane with marijuana and deliver it to the Bimini Islands.