Appellant, Johnny Luke, was convicted of capital murder on September 30, 1982, and was sentenced to death on October 29, 1982. His conviction and sentence were affirmed. Luke v. State,444 So.2d 393 (Ala.Crim.App.), aff'd, 444 So.2d 400 (Ala. 1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374,80 L.Ed.2d 846 (1984). Appellant filed a petition for writ of error coram nobis questioning the constitutionality of his conviction for the capital offense, and an evidentiary hearing was held on November 30, 1984. The petition was denied and this appeal followed.
Appellant raises five issues on appeal. Three of the issues are not cognizable in a coram nobis proceeding because they were dealt with on direct appeal or could have been raised at trial or on direct appeal and were not. The writ of error coram nobis "does not serve as a substitute for an appeal." Summersv. State, 366 So.2d 336, 339 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979), and cases cited therein.
The principle issue raised on this appeal, which is cognizable in a coram nobis proceeding, is appellant's claim of ineffective assistance of trial counsel. Appellant contends that the failure to call a Mrs. Hughes (the widow of the capital murder victim) constitutes a gross deviation from prevailing professional norms and was therefore unreasonable under the totality of the circumstances. We disagree.
Appellant's conviction arose from the murder of Mr. J.T. Hughes. Mr. J.C. Bernard and Mr. Roy Phillips were appointed defense counsel to represent appellant; both attorneys had previous criminal trial experience. Both attorneys met the standards prescribed by § 13A-5-54, Code of Alabama 1975. Bernard had over five years' experience in the practice of law and from 75 to 80 percent of his practice was in the criminal field. His associate, Phillips, had over 25 years' experience, with considerable experience in criminal matters, including capital cases. Bernard had also participated as defense counsel in a capital case. At the coram nobis hearing, Bernard was the only witness called by appellant. According to Bernard, he and Phillips were supplied with a copy of the district attorney's file, which included statements made by appellant and other witnesses interviewed by the State. Contained in this file was a report by Investigator Raymond Smith, which stated that Mrs. J.T. (Louise) Hughes had told him that Mr. Hughes (the victim) told her shortly before his death that George Warren shot him.[1]
Mrs. Hughes was not called by the defense to testify about this statement, and appellant asserts that she should have been called regardless of what she may or may not have testified to at trial.
Bernard testified at the coram nobis hearing that he was not able to interview Mrs. Hughes prior to trial due to the great amount of hostility directed toward him and his client in the community. Bernard stated that prior to trial he had intended to call Mrs. Hughes as a witness. During the trial Bernard and Phillips conferred and decided not to call Mrs. Hughes to the stand because she had been in the courtroom crying during the course of the trial. The attorneys decided that placing the victim's crying widow on the stand would be detrimental to appellant's defense. They *Page 533 
were also not certain that Mrs. Hughes would admit to making the statement. Bernard and Phillips therefore decided that it was in the best interest of their client not to call Mrs. Hughes as a witness.
The original trial transcripts show that Investigator Smith, upon cross-examination by Phillips, testified as follows:
 "Q. And I'll ask you if she (Mrs. Hughes) made a statement to you to the effect that Mr. Hughes had said George Warren had shot him?
 "A. Mrs. Hughes said that she had been advised Mr. Warren was in the shooting, but she told me that she had not personally heard Mr. Hughes make any statement as to who had done the shooting."
Phillips then asked Smith to read a portion of his report to the jury. This appears in the transcript as follows:
 "Q. Look, if you will, please sir — do you have your report there?
"A. Yes, sir, I do.
". . .
 "Q. Now, at the next to the last typed sentence, pick up with the word `Mrs. Hughes' and read that for me, if you will.
". . .
 "A. `Mrs. Hughes stated that when she arrived at the business Mr. Hughes responded to her question as to who had shot him with the name "George Warren".'"
The first witness called by the defense was Investigator Herbert F. Parker, who also interviewed Mrs. Hughes several days after the incident. Parker testified that Mrs. Hughes stated that her husband said the name "George Warren" in response to the question "Who had shot him." On cross-examination, Parker's entire report, in which this statement was contained, was read to the jury. Apparently the decision not to call Mrs. Hughes was then made by Bernard and Phillips.
In brief, appellant argues that Mrs. Hughes's statement was the only exculpatory matter available at trial; that this statement was not investigated and was not presented at trial; and that counsel made an uninformed choice not to call Mrs. Hughes, based merely on their speculation as to what she would say. As stated by appellant, "[t]he only possible exculpatory matter in defendant's favor was never presented to the jury in any form or fashion."
One of appellant's attorneys attempted to interview several persons in the area where the crime occurred, including Mrs. Hughes, but was unable to because of hostility on the part of those persons. Counsel's performance is not deficient or inadequate where he is unable to interview a potential witness because of unwillingness of the witness to talk with him.Lindhorst v. United States, 658 F.2d 598, 604 (8th Cir. 1981), cert. denied, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309
(1982) (witness was personally hostile to defendant);Washington v. Watkins, 655 F.2d 1346, 1358 (5th Cir.), reh. denied, 662 F.2d 1116 (1981), cert. denied, 456 U.S. 949,102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (witness was police officer under instructions not to talk with attorney). Defense counsel cannot be faulted under such circumstances. The failure to interview Mrs. Hughes was caused by the hostility of Mrs. Hughes and not by inaction of counsel. The performance of counsel in this regard was not deficient or inadequate.
In Chappell v. State, 457 So.2d 995, 996 (Ala.Crim.App. 1984), we stated:
 "While the failure of counsel to investigate a potential source of exculpatory information may amount to ineffective assistance of counsel, United States v. Baynes, 687 F.2d 659, 673 (3d Cir. 1982), `[t]he decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel'. Oliver v. State, 435 So.2d 207, 209 (Ala.Crim.App. 1983). See also Strickland v. Washington, [466] U.S. [668], 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984); United States v. Cronic, [466] U.S. [648], 104 S.Ct. 2039, 80 L.Ed 2d 657
(1984). In reviewing a claim of ineffective *Page 534 
assistance of counsel, courts must consider the totality of the circumstances of each case."
In the case at bar it is clear that the attorneys representing appellant at trial were fully aware of the potential source of exculpatory information. Their efforts to interview Mrs. Hughes were thwarted by the apparent hostility in the area. This is not a case in which the potential exculpatory material was completely ignored, or withheld from the jury due to counsel's negligence.
In evaluating an ineffective assistance of counsel claim, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'". Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). "This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses." United Statesv. Long, 674 F.2d 848, 855 (11th Cir. 1982) (quoted in Falknerv. State, 462 So.2d 1040, 1042 (Ala.Crim.App. 1984)).
Evidence of Mrs. Hughes's statement was clearly before the jury as a result of the testimony of Investigators Smith and Parker. These witnesses were highly credible, and not emotionally involved as was Mrs. Hughes. As we read the trial transcript, previously quoted, there appears to be some confusion as to what Mrs. Hughes told the officers or as to what they entered into their reports. However, Mrs. Hughes was not called during the coram nobis hearing and we do not know what her testimony would have been concerning the statement.
We do not find convincing appellant's argument that it does not matter what Mrs. Hughes would have said because the defense would have benefited either way. Of course, had Mrs. Hughes admitted making the statement, it would have verified the testimony of Smith and Parker. However, this would not have had the effect of exonerating appellant, because other credible testimony was presented to the jury in which Mr. Hughes stated before his death that appellant shot him and that George Warren was present. See Luke, 444 So.2d at 395. Appellant also made several statements in which he confessed to being the triggerman in the Hughes murder.
We are also not persuaded by appellant's argument that, had Mrs. Hughes denied making the statement, it could have undermined the State's entire case and cast doubt on the entire police investigation. The State's case was not so weak as to be subject to collapse if the testimony of the bereaved widow had been conflicting with prior statements made to investigators. In our view, the defense attorneys presented the exculpatory matter contained in Mrs. Hughes's statement in the light most favorable to appellant. Moreover, it was presented by two very credible sources. Furthermore, it is beyond question that Mrs. Hughes would have been an uncooperative and hostile witness. Had Mrs. Hughes recanted her prior statement, or offered a reasonable explanation for changing the content of the statement, it would have undermined the exculpatory nature of the statement. We can conceive of no clearer factual situation in which trial counsel is called upon at a crucial point in the proceedings to make a strategic and tactical decision about whether to call a witness.
We have reviewed the totality of the circumstances and conclude that counsel's conduct was not unreasonable or inadequate. Counsel's decision not to call Mrs. Hughes was based on their assessment of the factual circumstances existing at trial and we cannot conclude that the challenged action was anything other than sound trial strategy. Moreover, appellant failed to show resultant prejudice. In order to show that the failure to call Mrs. Hughes rendered counsel's representation ineffective, appellant had to show in the court below that the trial probably would have turned out differently had Mrs. Hughes testified. Strickland v. Washington, supra. Appellant *Page 535 
has not shown what Mrs. Hughes's testimony would have revealed. He has therefore failed to carry his burden of showing that the failure to call Mrs. Hughes as a witness was prejudicial to him in any way.
The final issue raised by appellant concerns the trial court's amended order denying the petition for writ of error coram nobis. A hearing was held by the trial court on the petition on November 30, 1984, and on the same date the trial court filed its order denying the petition. This order included findings of fact and conclusions of law. Appellant gave timely notice of appeal. The State filed a motion for "clarification" of the order, asking the court to "address more specifically the claims raised by the petitioner" so that the order would "more completely reflect the findings of fact and conclusions of law on which the court based its decision." The State then moved this court to suspend the rule regarding the time for filing briefs, under the authority of Rule 2 (b), A.R.A.P., so that the State's brief would not have to be filed until the trial court either amended its order or refused to amend it. On February 1, 1985, this court granted the motion to suspend the rule. On February 7, 1985, appellant filed a motion with this court asking that we withdraw our order suspending the rule. We denied the motion on the same date. After a hearing on February 14, 1985, and over the objection of appellant, the motion for clarification was granted by the trial court. On June 10, 1985, the trial court filed an amended order. This amended order did not change the ruling of the trial court contained in its original order denying the petition, and was simply a more detailed and comprehensive statement of the court's findings of fact and conclusions of law.
Appellant contends that the motion for clarification of the order was in the nature of a post-trial motion under A.R.Crim.P.Temp. 13, and, not having been ruled upon within 60 days of filing, should have been deemed denied. A.R.Crim.P.Temp. 13 (d). The State takes the position that there is no specific rule covering the type of motion filed in this case, but that it is in the nature of a motion under A.R.A.P. 10 (f). The motion under consideration does not appear to be a post-trial motion as contemplated by A.R.Crim.P.Temp. 13, and it is clearly not a motion under A.R.A.P. 10 (f). An appeal from a denial of a petition for writ of error coram nobis is civil in nature. Allen v. State, 42 Ala. App. 9,150 So.2d 399, cert. denied, 275 Ala. 691, 152 So.2d 439, cert. denied, 374 U.S. 854, 83 S.Ct. 1922, 10 L.Ed.2d 1074 (1963). A procedure for amending the findings of the trial court is found in A.R.Civ.P. 52 (b), and the pertinent part thereof is quoted as follows:
 "(b) Amendment. Upon motion of a party filed not later than 30 days after judgment or entry of findings and conclusions the court may amend its findings or make additional findings or may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59."
No post-judgment motion filed pursuant to A.R.Civ.P. 52 (b) shall remain pending in the trial court for more than 90 days, unless with the express consent of all the parties, and a failure by the trial court to dispose of any such motion within the time permitted, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period. A.R.Civ.P. 59.1. The post-judgment motion in the instant case was pending in the trial court over five months. The record does not show the exact date that the motion was filed in the circuit court and there is some question as to its timeliness. However, it is clear that, applying either A.R.Crim.P.Temp. 13 (d) or A.R.Civ.P. 59.1, the motion would have been denied by operation of law. However, this court has authority to remand cases to the trial courts for further hearings and additional findings, and frequently makes use of this procedure, particularly in cases of this kind. Indeed, we would have the authority to remand the instant case to the trial court for further findings if we deemed it necessary. It could be argued that this court, by granting the motion to *Page 536 
suspend the rule pertaining to the filing of briefs in order to allow the court time to respond to the State's motion for additional findings, was in effect remanding for additional findings. At least it constituted an implied approval of the State's motion. Although we see nothing prejudicial to the rights of appellant in the amended order, in view of the uncertainty surrounding it as to whether it is properly a part of the record on appeal, we deem it advisable that it not be considered a part of the record in this appeal. We have therefore excluded it from our consideration in reaching our decision in this case.
We have examined the entire record in this case and conclude that there is no merit in the allegations contained in the petition for writ of error coram nobis. The trial court's findings and order of November 30, 1984, denying the petition are fully supported by the evidence in the record, and are due to be affirmed.
AFFIRMED.
All Judges concur.
[1] George Warren was also involved in the murder of Mr. Hughes. See Luke, 444 So.2d at 394-95; Warren v. State, 461 So.2d 33
(Ala.Crim.App. 1984).