[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12722
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00009-SPM-AK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM DIAZ,
a.k.a. Eduardo Morales Rodriguez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 7, 2010)

Before TJOFLAT, CARNES, and BARKETT, Circuit Judges.

PER CURIAM:

William Diaz challenges his convictions following his conditional guilty

plea to one count of conspiracy to manufacture marijuana, in violation of 21 U.S.C. § 841(b)(1)(B)(vii), one count of manufacturing marijuana, in violation of 21 U.S.C.§ 841(b)(1)(B)(vii), and one count of felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Diaz argues that the district court erred in failing to order the suppression of his statements and evidence obtained by law enforcement officers during a warrantless search of his property and during the execution of a search warrant which Diaz contends was based on illegally obtained information.

## I.

We review the denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error, and its application of law to fact *de novo*. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). "Further, when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *Id.* Where district court rulings implicitly credit certain testimony, we will do so as well. *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002).

After an evidentiary hearing on Diaz's motion, the district court credited the testimony of the government's witnesses and made the following findings: On January 26, 2009 Officers Wolfe and Devinny drove onto Diaz's property through

an open driveway to conduct a "knock and talk" interview with Diaz in connection

with an investigation. The property consists of about 50 acres of land of two

adjoining parcels with two residences and two barns. The officers entered one

property and drove on an unobstructed path to the second property where they

observed Diaz's truck parked near a barn. When the officers arrived at the barn,

both sliding doors were open and the officers could see through to the interior of

the barn. Officer Wolfe walked through the barn and called out, but no one

answered. While standing just inside barn door, the officers were startled to see

Diaz come up from a hidden hatch in the floor of the barn. Officer Wolfe drew his

gun, handcuffed Diaz and advised him that he was being detained, but not under

arrest. Diaz responded, "But you are going to arrest me, there's a lot of marijuana

down there." Officer Devinny read Diaz his Miranda warnings. Diaz consented to

a search of both parcels of land, including the two residences and two barns, and

signed a written waiver form agreeing to cooperate. Upon their immediate search,

the officers discovered an underground marijuana grow operation when they

entered the room below the barn floor. In addition to the consent search, the

officers also obtained warrants to search both properties which they executed the

following day.

Diaz first argues that DEA task force officers violated the Fourth

3

Amendment's warrant requirement by entering his property under the pretext of a "knock and talk" visit. The Fourth Amendment of the U.S. Constitution provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. The Fourth Amendment however, is not implicated by entry onto private land for legitimate police purposes unconnected with a search of the premises. *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2002). Absent express orders from the person in possession, an officer may walk up the steps and knock on the door of any man's castle, with the honest intent of asking questions of the occupant thereof." *Id.* (quotations omitted). We have referred to this principle as the "knock and talk" exception to the Fourth Amendment's warrant requirement. *See, e.g.*, *id.* at 1205. During the course of a knock and talk, officers may take reasonable steps to initiate contact by visiting areas of the property other than the front door. *See id.* at 1204-05 (holding that the Fourth Amendment was not triggered when officers approached a man who shouted out to them).

Here, the Fourth Amendment was not triggered when Officers Devinny and Wolfe entered Diaz's property, nor when they drove to the barn to contact Diaz. The district court expressly credited Officer Wolfe's testimony that he entered the property through an open gate, intending to contact Diaz at his house. Upon

learning that Diaz had moved to the barn, he then changed plans and followed him there. On these facts, to which we grant substantial deference, the officers took reasonable steps to contact Diaz on his property, and thus did not trigger the protections of the Fourth Amendment by approaching the barn. *See Taylor*, 458 F.3d at 1204.

Diaz also asserts that the officers violated his reasonable expectation of privacy in the barn by following him to the barn and entering it without his consent. Although in certain circumstances, a person may maintain a reasonable expectation of privacy in areas that he does not formally own or rent, *see United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999),"there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home." *United States v. Long*, 674 F.2d 848, 853 (11th Cir. 1982). In determining whether an area is within the curtilage, we examine: "1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an enclosure surrounding the home; and, (4) the steps the resident takes to protect the area from observation." *Taylor*, 458 F.3d at 1206. We have previously held that an area 90 feet from an occupied home may be outside the curtilage. *Hatch*, 931 F.2d at 1481.

Here, Officer Wolfe did not violate the protections of the Fourth Amendment by entering the barn, because Diaz did not have a reasonable expectation of privacy in the barn as it does not constitute curtilage. Diaz testified that he lived between 700 and 800 feet away from the barn, and that he was in possession of an unoccupied house 80 feet from it. Even if he had a reasonable expectation of privacy in the unoccupied home, that expectation did not extend to the barn under these circumstances. *See Hatch*, 931 F.2d at 1481 (holding that an area 90 feet from an occupied house was outside of the curtilage).

Diaz also contends that the officers coerced his consent to search the property, including his residence. Police officers may search, without a warrant or probable cause, areas that are protected by the Fourth Amendment if they obtain the possessor's voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "The voluntariness of the consent must be judged in the light of the totality of the circumstances." *United States v. Tovar-Rico*, 61 F.3d 1529, 1535 (11th Cir. 1995).

Here, based on Diaz's testimony during the suppression hearing, the district court found that Diaz understood English well and was intelligent even though he asserted that English was his second language. The district court found that the officers were not coercive and that Diaz cooperated with them and had been

6

apprised of his Miranda warnings.[1]  On these facts, we cannot say that the district

court erred in holding that Diaz knowingly and voluntarily consented to the search

performed on January 26, 2009.

II.

Diaz next argues that the two warrants executed on the following day after

his arrest were invalid because they were based on unlawfully obtained

information.  Additionally, he contends that the affidavit supporting the warrant

improperly relied upon anonymous information and unsubstantiated overheard

conversations.  We review whether an affidavit established probable cause *de

novo* and findings of historical fact for clear error.  *United States v. Jiminez*, 224

F.3d 1243, 1248 (11th Cir. 2000).

The Fourth Amendment mandates that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  In

order to establish probable cause, a search warrant affidavit must "state facts

sufficient to justify a conclusion that evidence or contraband will probably be

found at the premises to be searched."  *United States v. Martin*, 297 F.3d 1308,

---

[1] We note that the district court failed to mention that Agent Andrews, the DEA agent in charge of the investigation, was also present and involved in seeking Diaz's consent to search his property.  However, even with three officers present, we do not find that the evidence shows that Diaz was coerced.  The district court's findings that Diaz understood his rights and willingly cooperated with the officers is supported by Agent Andrews's testimony, which the district court credited.

7

1314 (11th Cir. 2002). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* When an informant is mentioned in the affidavit, there is no need to establish the veracity of the informant's information so long as it is sufficiently corroborated by other information. *Id.* Unlawfully obtained information may not form the basis for the issuance of a search warrant. *See Alderman v. United States*, 394 U.S. 165 (1969).

The affidavit in support of the warrants in this case sufficiently established probable cause that contraband would be found on the property. The affidavit contained the officer's observations from the consent search on January 26th, which included 193 marijuana plants and three firearms. Based on this record, the district court did not err in denying the suppression of the firearms.

**AFFIRMED.**