UNITED STATES of America,
Plaintiff-Appellee,

v.

Alonzo BERRONG and Jack McKay,
Defendants-Appellants.

No. 82–8286.

United States Court of Appeals,
Eleventh Circuit.

Aug. 22, 1983.

Rehearing and Rehearing En Banc
Denied Oct. 13, 1983.

---

Douglas W. McDonald, Sr., Cornelia, Ga., for Berrong.

Robert J. Reed, Gainesville, Ga., Mark J. Kadish, Atlanta, Ga., for McKay.

S. Lark Ingram, Asst. U.S. Atty., Atlanta, Ga., for the U.S.

Before TJOFLAT, FAY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellants Alonzo Berrong and Jack McKay were convicted of possession of marijuana with intent to distribute, 21 U.S.C.A. § 841(a)(1) (West 1981), and of conspiracy to possess marijuana with intent to distribute, 21 U.S.C.A. § 846 (West 1981). Their appeal consists of several claims. We reject each of these claims and affirm the convictions. The only claim that merits any discussion concerns Berrong's allegation that evidence was obtained from an illegal search of a marijuana field. The remainder of this opinion deals with this Fourth Amendment question.

## FACTS

On July 30, 1981, Charles King of the Georgia Bureau of Investigation ("GBI") received information that marijuana was being grown on property owned by Lucy Berrong, wife of appellant Alonzo Berrong. On August 2, King rented a plane and a pilot and flew over the Berrong property. While flying approximately 800 feet above the ground, King was able to see the Berrongs' property, including their home, a barn, a mobile home, a camper trailer, and what appeared to be a field containing marijuana. On August 4, King flew over the Berrongs' property at 500 feet above ground, and he confirmed his prior observation that the field contained marijuana.

The next day, the GBI searched the marijuana field. At 7:15 a.m., a GBI ground observation crew arrived at the marijuana field after walking from a public road through woods and fields for almost two hours. The crew members concealed themselves in the woods surrounding the marijuana field in the hope of capturing the marijuana growers trying to harvest marijuana. Although the agents waited for nearly six hours, nothing happened. At 1:00 p.m., the agents searched the marijuana field and seized the marijuana.

The constitutionality of the search depends in part on the layout of the Berrongs'

property, specifically the relative location of the marijuana field and the Berrongs' house. Although the record does not completely describe some points, the layout of the Berrongs' property can be deduced from trial testimony.[1] The Berrong residence is located near U.S. Highway 76. A one-lane unpaved driveway leads from this highway to the Berrongs' house. A mobile home and a barn were located next to the house. An old unusable Ford Mustang, lacking an engine and seats, stood next to the barn near the driveway, approximately 250 to 300 yards from the house. This Mustang contained an alarm system used to guard the marijuana field. Farther down the driveway were several other structures. These included a shed, a camper trailer which contained the alarm system's receiver, a log cabin, and a small uncovered shed. Beyond the cabin and this last shed stood a line of trees which surrounded the marijuana field, a square area which covered one acre. The line of trees surrounding the field was 50 yards from the log cabin, 75 steps from the

camper trailer, and approximately one-quarter of a mile from the Berrongs' residential house. The record does not contain any particularized description of the boundaries of the Berrongs' property. It seems that both the field and the camper trailer were located in an area leased by Berrong to persons whom the record does not identify.

## DISCUSSION

 The question for decision concerns the lawfulness of the search and seizure conducted on August 5, 1981.[2] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The government proceeds on the theory that the search and seizure was warrantless.[3] A warrantless search and seizure is presumptively unreasonable, subject to a few specific exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514,

---

1. Photographs of the property were introduced as exhibits in the trial below. The record on appeal does not include these photographs.

2. Appellant Berrong does not contest the aerial observations made by Agent King. Though this is far from clear from appellant's argument on appeal, appellant appears to challenge the introduction into evidence of the alarm system and the receiver. These two items were seized by Agent King on August 5. King, who had been receiving radio communications from the ground crew, entered the Berrongs' property after the ground crew began to search the field. King entered the Berrongs' property on their private driveway. King proceeded to the marijuana field after he spoke with appellant Berrong, who was mowing the lawn at the time. Returning from the field to the house, King seized the alarm system, which was in the floorboard area of the Mustang. Then he seized the alarm system's receiver, which was attached to the camper trailer. According to King's testimony, both of these items were in plain view. Other items were seized, but the government did not seek to introduce these other items into evidence.

 Assuming that appellant has sufficiently challenged the introduction into evidence of the alarm system and the receiver, we hold that the seizure of the alarm system and the receiver does not require reversal. The government sought to justify the seizure of these objects

based on the plain view doctrine, *see Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) (opinion of Stewart, Douglas, Brennan, and Marshall, JJ.). We need not decide the applicability of this doctrine because our review of the record convinces us that, even if the district court erred in denying the motion to suppress these two objects, such error was harmless beyond a reasonable doubt. *Chambers v. Maroney,* 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970); *United States v. Bulman,* 667 F.2d 1374, 1384 (11th Cir.1982), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). In light of the other evidence presented at trial, "the probative weight of the items seized ... [the alarm system and receiver] was miniscule." 667 F.2d at 1384.

3. Although the GBI agents obtained a search warrant, it is not at all clear from the record when that search warrant was obtained. The warrant itself is not in the record. The district judge noted that the search warrant, which was dated August 4 at 5:40 p.m., bears a judge's signature followed by the statement *nunc pro tunc,* 10:07 a.m., August 11, 1981. Record on Appeal, vol. 8, at 147. Other testimony indicated that the search warrant was received before August 5. Record on Appeal, vol. 7, at 186–87. In any event, the government does not rely on the search warrant to justify the search conducted on August 5, and therefore we also ignore the warrant.

19 L.Ed.2d 576 (1967). In this case, the government seeks to apply the so-called open fields doctrine as one of the specific exceptions.

The open fields doctrine evolved from Justice Holmes' statement that the "special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields." *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed.2d 898 (1924). *Hester v. United States* upheld a visual search conducted by two revenue officers while trespassing on the open fields of the defendant's land. 265 U.S. at 58–59, 44 S.Ct. at 446. The Supreme Court has recently granted petitions of certiorari in three cases involving the application of the open fields doctrine.[4] A reading of the lower court opinions in these cases suggests that courts have divided as to how the open fields doctrine should be applied. That the *Hester* open fields doctrine remains with us in some form does not appear to be in dispute. *See Rakas v. Illinois*, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977); *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 865, 94 S.Ct. 2114, 2115–2116, 40 L.Ed.2d 607 (1974); *compare United States v. Knotts*, —— U.S. ——, —— & ——, 103 S.Ct. 1081, 1085, & 1086, 75 L.Ed.2d 55, 62 & 64 (citation to *Hester*) *with United States*

*v. Knotts*, —— U.S. at ——, 103 S.Ct. at 1088, 75 L.Ed.2d at 66 (1983) (Blackmun, J., concurring in the judgment) (majority opinion's citation to the open fields doctrine is unnecessary).

As a general rule, the applicability of the Fourth Amendment does not focus on the question whether an area or a place is constitutionally protected, *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967), but rather whether the defendant can claim a "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. at 360, 88 S.Ct. at 516 (Harlan, J., concurring); *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Analysis of such expectation proceeds in two parts. First, it must be determined whether the defendant "has shown that 'he seeks to preserve [something] as private.'" *Smith v. Maryland*, 442 U.S. at 740, 99 S.Ct. at 2580 (quoting *Katz v. United States*, 389 U.S. at 351, 88 S.Ct. at 511). Second, it must be determined whether the defendant's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. at 361, 88 S.Ct. at 516–517 (Harlan, J., concurring).

The question whether appellant Berrong exhibited a subjective expectation of privacy need not detain us because, applying the second prong of the *Katz* test, we conclude that the expectation, if any, was not reasonable.[5] "Legitimation of expectations of pri-

---

**4.** *See United States v. Oliver*, 686 F.2d 356 (6th Cir.1982) (en banc) (as a matter of law, a defendant-landowner can have no reasonable expectation of privacy with respect to an open field on his land), *cert. granted*, —— U.S. ——, 103 S.Ct. 812, 74 L.Ed.2d 1012 (1983); *State v. Thornton*, 453 A.2d 489 (Me.1982) (open fields doctrine not applicable to justify warrantless search of defendant's land), *cert. granted*, —— U.S. ——, 103 S.Ct. 1520, 75 L.Ed.2d 944 (1983); *State v. Brady*, 406 So.2d 1093 (Fla. 1982) (open fields doctrine not applicable where officers crossed a dike, rammed through one gate, cut the chain lock on another gate, cut or crossed several posted fences, and proceeded several hundred yards before they were in a position to observe criminal activity), *cert. granted*, 456 U.S. 988, 102 S.Ct. 2266, 73

L.Ed.2d 1282 (1982); *see also United States v. Dunn*, 674 F.2d 1093 (5th Cir.1982) (Fourth Amendment proscribed warrantless search of a barn which was within the curtilage of the home), *petition for cert. filed*, 51 U.S.L.W. 3260 (U.S. Sept. 22, 1982) (No. 82–508).

**5.** It is arguable whether appellant Berrong exhibited a subjective expectation of privacy. The record indicates the total absence of any fence, wall, "no trespassing" signs, or other artificial obstructions to entry on the property. Of course, the existence of the alarm system suggests that someone had such an expectation. However, the record does not clarify whether Berrong shared that expectation. The alarm system was attached to the camper trailer. At trial, the district judge asked defense counsel whether the Berrongs lived in the trail-

vacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois,* 439 U.S. at 143 n. 12, 99 S.Ct. at 143 n. 12. Binding precedent clearly states "that there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home." *United States v. Long,* 674 F.2d 848, 853 (11th Cir.1982); *United States v. Williams,* 581 F.2d 451, 453 (5th Cir.1978).[6] Although the distinction between the open fields and the curtilage of a home is not talismanic, *United States v. Jackson,* 588 F.2d 1046, 1053 n. 12 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979), that distinction does reflect what expectations of privacy were reasonable in this case.

■■■ What is curtilage is a question of fact. *Hodges v. United States,* 243 F.2d 281, 283 (5th Cir.1957); *Walker v. United States,* 225 F.2d 447, 449 (5th Cir.1955). In denying the motions to suppress the evidence obtained in the search and seizure, the district judge viewed the photographs and the map of the property and said "the search of the field involved could not have been part of any curtilage or have been included in anything that anyone had a

right of expectation of privacy of." Record on Appeal, vol. 7, at 184–85. We uphold the district judge's ruling. The curtilage of the home is formed by the buildings "constituting an integral part of that group of structures making up the farm home," *Walker v. United States,* 225 F.2d at 449, or "the immediate domestic establishment" of the home, *Hodges v. United States,* 243 F.2d at 283. The "outer limits of the curtilage" have been expressly defined to be "the outer walls of the extreme outbuildings of the curtilage." *United States v. Williams,* 581 F.2d at 454. Since the marijuana field was located beyond all of the buildings on the Berrongs' property, it was beyond the curtilage of the home. Moreover, the field was one-quarter of a mile from the home. At this distance, any expectation of privacy stemming from the home to the surrounding area was diminished. Absent any clear and specific demonstration of an expectation of privacy in the field, justified by custom or property concepts, the distinction between the curtilage and the open fields should be applied.[7]

We hold that appellant did not have a reasonable expectation of privacy in the marijuana field. The search of the field and the seizure of the marijuana did not violate the Fourth Amendment.

AFFIRMED.

---

er. One of the defendants' attorneys responded, "we don't know who was living there." Record, vol. 8, at 175. Berrong's attorney offered no further explanation. Besides the alarm system, the record suggests that the marijuana growers used vicious watchdogs to guard the marijuana field. The dogs were apparently off duty when the GBI agents searched the field.

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209. *Cf. Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

7. It might have been argued, though appellants have not presented any evidence or argument on this point, that the curtilage of the camper

trailer and the log cabin must also be determined. Of these, the log cabin was closest to the field, standing 50 yards away. However, the record indicated that the log cabin was not used as a dwelling place. As for the camper trailer, the record indicated that the camper trailer may have been used as a temporary residence, but there is no indication as to who was using it. In fact, the district judge asked the defense attorneys whether the Berrongs lived in the trailer, and the only response he received was that the camper's inhabitants were unknown. The camper trailer was 75 steps from the field. We decline to speculate as to whether the camper trailer was actually used as a dwelling. The appellant must shoulder the burden of proof to demonstrate an expectation of privacy. *See United States v. Bachner,* 706 F.2d 1121, 1125–1126 (11th Cir. 1983).