**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joe HATCH a/k/a "Little Joe",
Defendant–Appellant.**

**No. 90–5099
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 24, 1991.

---

Raymond E. LaPorte, Tampa, Fla., Steve Kackley, Sebring, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Thomas A. O'Malley, Asst. U.S. Atty., West Palm Beach, Fla., Thomas H. Duke, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

## I. INTRODUCTION

A federal grand jury in West Palm Beach, Florida returned a one-count indictment against appellant Hatch charging him with knowingly and intentionally possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Before trial, Hatch moved to suppress the marijuana as evidence against him, challenging on

federal and state constitutional grounds the warrantless search and seizure of his property. Following a suppression hearing, the district court denied Hatch's motion. The court determined that "the curtilage that defines the property in question here is enclosed in the fencing around the home and taxidermist building, even if the fence may not be complete on the north, and perhaps east sides of the property." Hatch subsequently pled guilty but preserved for appeal, pursuant to Fed.R. Crim.P. 11(a)(2), his Fourth Amendment challenge to the seizure of the marijuana growing on his property.

## II. DISCUSSION

The sole issue on appeal is whether the district court erred as a matter of law in denying appellant's motion to suppress based on its factual determination that appellant was growing marijuana in an "open field" beyond the curtilage of his house. The denial of a motion to suppress presents a mixed question of law and fact. *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir.1988). Findings of fact are upheld unless clearly erroneous. *Id.* at 1408; *United States v. Edmondson*, 791 F.2d 1512, 1514 (11th Cir.1986). Significantly, for our purposes here, what is curtilage, and, therefore, within the realm of legitimate privacy expectations, is a question of fact. *United States v. Berrong*, 712 F.2d 1370, 1374 (11th Cir.1983). Application of law to fact is subject to *de novo* review. *Alexander*, 835 F.2d at 1408. In reviewing denial of a motion to suppress, we construe the facts in the light most favorable to the prevailing party below. *Id.; United States v. Sarda–Villa*, 760 F.2d 1232, 1235 (11th Cir.1985).

"[T]he special protection accorded by the Fourth Amendment to the people in their 'person, houses, papers and effects,' is not extended to the open fields." *Oliver v. United States*, 466 U.S. 170, 176, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984) (quoting *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924)). Thus, a person "may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver*, 466 U.S. at 178, 104 S.Ct. at 1741. "[T]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Id.* at 180, 104 S.Ct. at 1742.

*United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), on which appellant relies, recognizes that, consistent with *Oliver*, Fourth Amendment protection extends to the curtilage of the house. *Id.* at 300, 107 S.Ct. at 1139; *see also Oliver*, 466 U.S. at 180, 104 S.Ct. at 1742. How far the curtilage and Fourth Amendment protection extends turns on "whether an individual reasonably may expect that the area in question should be treated as the home itself." *Dunn*, 480 U.S. at 300, 107 S.Ct. at 1139; *Oliver*, 466 U.S. at 180, 104 S.Ct. at 1742. In resolving this issue, the Court in *Dunn* reasoned:

> Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301, 107 S.Ct. at 1139. In that case, the Court held that a barn used to store chemicals and equipment was not within the curtilage of the house for purposes of the Fourth Amendment. Applying the four factors, *id.* at 302–03, 107 S.Ct. at 1140, the court held that the barn was fifty yards—a "substantial" distance—from the fence surrounding the house and sixty yards from the house itself. Second, the barn was outside the fence surrounding the house, and that fence clearly established the area around the house as a distinct area within the parcel. Third, the Court found it "especially significant" that the physical evidence clearly established that

the barn was not being used "for intimate activities of the home." Aerial photos showed the defendant's truck at the barn, apparently unloading chemical containers; the officers heard a motor running in the barn and smelled strong chemical odors in the barn and surrounding area. Finally, the Court noted that the defendant did little to shield the barn area from view.

The district court in the instant case relied heavily on the fact that appellant's home and the area immediately surrounding it were separated from the rest of the parcel by partially completed fences. The court reasoned:

> I find from the evidence that the curtilage that defines the property that was in question here is enclosed in the fencing around the home and taxidermist building, even if the fence may not be complete on the north, and perhaps east sides of the property. It is true in a narrow definition of the term perimeter that means all the way around. But it seems to me it isn't necessary that the fence be without any kind of breech [sic] in order for the curtilage to be defined for the purpose that we are talking about here. I think we have to be practical about the thing, and the areas where the fence may not be complete around his property is really not an area that is in question in connection with the investigation that was made by these officers.

R3:204–05. The court concluded that the totality of the evidence did not establish that Hatch's reasonable expectation of privacy was violated. Id. at 205.

■■■ Applying the factors in Dunn, and based on the evidence presented at the suppression hearing, we hold the district court correctly concluded that appellant had no Fourth Amendment protection against a warrantless search and seizure of the marijuana plants.[1] The marijuana was growing thirty yards and farther from Hatch's home. Aerial photographs submitted as exhibits clearly indicate that the area in which the plants were growing was separated from Hatch's home by a taxidermy building, several fences, stock pens, a tac room, and a drying barn. See Berrong, 712 F.2d at 1374 ("Since the marijuana field was located beyond all of the buildings on the Berrongs' property, it was beyond the curtilage of the home."). These photographs also show that Hatch planted the marijuana outside the fences (posts, barbed wire and hog wire) setting apart his house and taxidermy building as a separate compound, so to speak, within the parcel of land.[2] Hatch testified that "the basic fences just around the house, the only reason they are there is to keep the livestock out of the main part of the yard, and out of my [taxidermy] shop." Moreover, we have held that "there is no legitimate expectation of privacy in outbuildings and open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home." United States v. Long, 674 F.2d 848, 853 (11th Cir.1982) (emphasis added). We also note that, as in Dunn, the fact that Hatch had erected a perimeter fence surrounding his 300 acre tract does not create a constitutionally protected privacy interest in the open fields on his property. See Dunn, 480 U.S. at 304, 107 S.Ct. at 1141 (citing Oliver, 466 U.S. at 182–83, 104 S.Ct. at 1743–44) (building fences on open fields does not create a protected privacy interest in them).

■■■ Consideration of the use to which the area surrounding the marijuana plants

---

**1.** We also hold, under the Supreme Court's recent decision in Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), that the helicopter overflight raises no Fourth Amendment concerns here. Testimony of the deputies flying over indicated that they observed with the naked eye the marijuana growing in an unenclosed field from an altitude of 500 feet as they circled Hatch's property. Therefore, whether the search and seizure passes constitutional muster here depends, not on the manner by which the eradication team learned of the presence of the marijuana on Hatch's property, but on the extent of the curtilage of Hatch's house.

**2.** Contrary to appellant's contention, the extent of the curtilage, according to Dunn, does not turn on whether or not the area surrounding the house is completely fenced. The test for determining curtilage is not a bright-line determination; nor does the boundary it defines need to be as "bright line" as a fence or other obvious barrier. The question is one of "reasonable expectations," and for that reason, we do not define curtilage so mechanically.

was put, the third factor, also supports a finding of no protectible property interest. The stock pens, the tac room, the drying bar, the growing marijuana, and the remainder of Hatch's 300 acres, lay outside the fenced compound containing the home and taxidermy building. Appellant cannot reasonably argue that these activities (including his daily use of a nearby garbage dump for disposing of trash from his home and animal remains from his taxidermy shop), separated as they were from the home by the fencing, were connected with the intimate activities of the home. As in *Oliver*, any expectation of privacy appellant may have had in activities carried on in an "open field" was not reasonable. *See Oliver*, 466 U.S. at 182–83, 104 S.Ct. at 1743.

Finally, as to whether the marijuana was shielded from observation, we find that the marijuana plants were not visible to passers-by. The trees and surrounding brush appear to obscure the marijuana from view. Only by entering well into appellant's property and proceeding down a footpath could one view the marijuana. Visitors to Hatch's "compound" and customers of the taxidermy shop would not pass within viewing distance of the plant. Notwithstanding this, however, the other factors taken together easily put this marijuana outside the curtilage of Hatch's residence. And, as the Supreme Court acknowledged in *Dunn*, the four factors set forth there cannot be applied mechanically:

> Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the house itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.

480 U.S. at 301, 107 S.Ct. at 1140.

## III. CONCLUSION

From the evidence presented, we conclude that the district court did not err in rejecting appellant's Fourth Amendment challenge. Therefore, we AFFIRM the district court's denial of Hatch's motion to suppress.