**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Severino CRUZ–HERNANDEZ,**
**Defendant–Appellant.**

**No. 93–5313.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1995.

---

Peter Birch, Asst. Federal Public Defender, West Palm Beach, FL, for appellant.

Kendall Coffey, U.S. Atty., Miami, FL, William Michael, Jr., Asst. U.S. Atty., Fort Pierce, FL, Lynne W. Lamprecht, Linda Collins Hertz, Lisa A. Hirsch, Carol Herman, Asst. U.S. Attys., U.S. Attorney's Office, Miami, FL, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

This case requires us to determine whether a roving border patrol agent had reasonable suspicion to stop the defendant to verify his citizenship. The district court denied a motion to suppress statements and evidence and found that the factors asserted by the border patrol agent were sufficient to support a reasonable suspicion. We AFFIRM.

## I. BACKGROUND

On April 23, 1993, Senior Border Patrol Agent Matthew Zetts and a trainee were patrolling an area five miles from the Florida coastline in Fort Pierce, Florida. At approximately 12:30 P.M., Zetts and the trainee, both dressed in their uniforms, drove to a corner gas station parking lot in an area known to Zetts to be frequented by undocumented or illegal aliens. They parked their marked border patrol vehicle in an eastbound direction. As Zetts observed traffic, he noticed defendant-appellant, Severino Cruz–Hernandez, heading westbound in a rough-looking 1980 Dodge extended, twelve-passenger van with an out-of-state license plate. As Cruz–Hernandez turned the corner, he glanced at Zetts, appeared to be nervous, and attempted to avoid eye contact with Zetts by jerking his head to the front. Cruz–Hernandez initially drove the van slowly away from the light. When Zetts pulled behind him in traffic, however, Cruz–Hernandez quickly accelerated to the speed limit. Zetts observed that Cruz–Hernandez and his passenger appeared to be Hispanic and were wearing clothes typical of undocumented field workers in the area.

When Zetts activated his blue lights to stop the van, Cruz–Hernandez readily obeyed. Zetts asked Cruz–Hernandez for his name and nationality. Cruz–Hernandez exited the vehicle and opened his wallet displaying to Zetts a counterfeit, permanent resident alien card. Zetts immediately recognized the counterfeit card and arrested Cruz–Hernandez for violating 18 U.S.C. § 1546(a). After Zetts read Cruz–Hernandez his *Miranda* rights, Cruz–Hernandez admitted to Zetts that he had purchased this document together with a counterfeit Social Security card.

Prior to trial, Cruz–Hernandez filed a motion to suppress all statements and evidence

procured from him by Zetts during the stop. He contended that Zetts lacked reasonable suspicion for the stop. After his conviction, Cruz–Hernandez appealed the district court's denial of his motion to suppress. Thus, we must determine whether the stop was constitutional.

## II. DISCUSSION

█ The district court's denial of a motion to suppress evidence is a mixed question of law and fact. *United States v. McKinnon,* 985 F.2d 525, 527 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993). We overturn the district court's factual findings for clear error only, but we review its application of the law to those facts *de novo. Id.* Because the government prevailed below, we view the facts in the light most favorable to it. *United States v. Hatch,* 931 F.2d 1478, 1480 (11th Cir.), *cert. denied,* 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991).

"[T]he Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country, [and] it also forbids stopping or detaining persons for questioning about their citizenship on less than a *reasonable suspicion* that they may be aliens." *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975). To support a reasonable suspicion, a roving border patrol away from the border or its functional equivalents "may stop vehicles only if they are aware of *specific articulable facts,* together with *rational inferences* from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id.,* at 884, 95 S.Ct. at 2582 (emphasis added).

It is well established in this circuit that one critical factor to be considered in determining the character of the stop is whether there was evidence that the vehicle was coming from the border. *United States v. Pena–Cantu,* 639 F.2d 1228, 1229 (5th Cir. Unit A

Mar. 1981); *United States v. Pacheco,* 617 F.2d 84, 86 (5th Cir.1980); *United States v. Lamas,* 608 F.2d 547, 549 (5th Cir.1979); *United States v. Ballard,* 600 F.2d 1115, 1119 (5th Cir.1979); *United States v. Lopez,* 564 F.2d 710, 712 (5th Cir.1977); *United States v. Escamilla,* 560 F.2d 1229, 1231 (5th Cir. 1977). While there is no suggestion that Zetts believed that the vehicle was coming from the border, "[t]he absence of a reason to believe the vehicle had come from the border ... is not alone dispositive."[1] *Pacheco,* 617 F.2d at 86; *see also Lamas,* 608 F.2d at 549 ("Although reason to believe that the vehicle had come from the border is a 'vital' element, it 'is not an essential element if other articulable facts "reasonably warrant suspicion." ' " (quoting *Escamilla,* 560 F.2d at 1232)); *see also Pena–Cantu,* 639 F.2d at 1229 (reviewing the other asserted factors "charily" to determine whether reasonable suspicion exists if there is no reason to believe that vehicle was coming from the border).

Reasonable suspicion also may be demonstrated by a combination of other factors such as "characteristics of the area, including its proximity to the border; the usual traffic patterns on the road; previous experience with alien smuggling ... in the vicinity; the behavior of the driver, such as erratic driving; and characteristics of the vehicle, including the appearance of being heavily loaded." *United States v. Barnard,* 553 F.2d 389, 391 (5th Cir.1977); *accord Brignoni–Ponce,* 422 U.S. at 884–85, 95 S.Ct. at 2582; *United States v. Lara,* 517 F.2d 209, 211 (5th Cir.1975). The border patrol agent may "assess the facts in light of his experience in detecting illegal entry and smuggling." *Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582. Notably, the *"totality of the particular circumstances"* governs the resolution of each case. *Id.* at 885 n. 10, 95 S.Ct. at 2582 n. 10.

█ Agent Zetts enumerated several factors upon which he relied in deciding to stop Cruz–Hernandez: (1) Cruz–Hernandez

---

1. A vehicle's proximity to a land border is of less significance in Florida because Florida shares no land border with a foreign country. Nevertheless, Agent Zetts's testimony demonstrated that large numbers of undocumented aliens are work-ing in Florida's agricultural industry. Thus, the factors that raise a reasonable suspicion that an individual is in the country illegally may differ between states.

was dressed in clothes typical of undocumented aliens working in the local fields; (2) Cruz–Hernandez quickly averted his gaze and jerked his head to the front, when Zetts looked at him,[2] and he seemed nervous; (3) Cruz–Hernandez appeared to be Hispanic; (4) Cruz–Hernandez was driving a van typical of those that transport large numbers of undocumented aliens to and from the fields; (5) the vehicle displayed an out-of-state license plate; (6) Zetts knew that many undocumented aliens lived in a local trailer park near the location of the stop; and (7) local businesses and citizens had complained of undocumented aliens living in the area and working in area fields.

None of these factors in isolation may be sufficient to give a border patrol agent reasonable suspicion. *See Brignoni–Ponce,* 422 U.S. at 885–86, 95 S.Ct. at 2582 (concluding that the single factor of being Hispanic is insufficient to supply reasonable suspicion); *Lopez,* 564 F.2d at 712 ("Reasonable suspicion should not turn on the ophthalmological reactions of the appellant."). Nevertheless, the border patrol agent may rely upon his experience and the totality of the circumstances in deciding to stop a particular individual. *Brignoni–Ponce,* 422 U.S. at 886 & n. 10, 95 S.Ct. at 2582 & n. 10. Zetts, a senior border patrol agent, had nine years of experience in detecting and removing undocumented aliens and five years of experience in that particular location. He had made numerous arrests of undocumented aliens in the local trailer park. He also had made hundreds of stops in the area with approximately eighty-five percent of the stops revealing undocumented aliens or other individuals, who had violated the immigration laws. Zetts articulated specific facts from which he made reasonable inferences, and the totality of the circumstances supported Zetts's suspicion. Therefore, the stop was constitutionally based on reasonable suspicion, and the motion to suppress properly was denied.

## III.  CONCLUSION

Cruz–Hernandez has challenged the constitutionality of a stop made by a border patrol agent to check citizenship in a Florida coastal community. The agent properly relied upon his experience, specific articulable facts, and the totality of the circumstances in stopping Cruz–Hernandez. Because reasonable suspicion existed, the stop was constitutional. We AFFIRM.

---

2. In this circuit, *failure* to make eye contact cannot be considered when determining whether reasonable suspicion exists. *Lopez,* 564 F.2d at 712. A driver who glances "repeatedly and nervously" at a border patrol agent as the driver passes, however, gives the agent cause to consider the behavior suspicious. *Id.; Escamilla,* 560 F.2d at 1233; *Barnard,* 553 F.2d at 391–92.