[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-11466
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00002-CR-2


UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellee,

                        versus

ANDREW COX,

                                                          Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 6, 2010)

Before EDMONDSON, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Andrew Cox appeals his conviction for conspiracy to manufacture marijuana, 21 U.S.C. §§ 841(a)(1), 846. No reversible error has been shown; we affirm.

We first address Cox's challenge to the district court's denial of his motion to suppress. We review the denial of a motion to suppress under a mixed standard of review, examining the district court's factual determinations for clear error and its application of law to those facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). And we construe all facts in the light most favorable to the prevailing party -- here, the government. Id.

Cox sought to suppress evidence seized pursuant to a search warrant issued for property located at 4050 Youngblood Drive, Union County, Georgia. United States Forest Service ("USFS") Agents received a call that complained of ATV tracks running across the caller's property and onto USFS property. The caller also noted that he observed "strange plants" on USFS property at the end of the ATV tracks. USFS agents investigated and discovered between 150 and 200 dead and dying marijuana plants in starter trays. The agents followed the ATV tracks farther and found a footpath that led to a clearing. The ATV tracks were followed

2

to Youngblood Drive, a dirt road, which agents believed was county-maintained. After traveling a short distance on Youngblood Drive, the agents noticed another footpath. Agents observed no signs indicating they were still within USFS property and no signs -- such as "no trespassing" signs -- indicating they were on private property. Following the footpath up a ridge agents reached the edge of the tree line where they observed a cleared area and a cabin, an open carport, and an outbuilding.

Agent Woodall wanted to inquire at the cabin about the ATV tracks that led to the marijuana found on USFS property. To that end, he walked a direct path from the roadbed straight to the cabin door. En route, no signage, fencing, or other barriers restricting access were observed. What was observed, however, directly on that route, was a large number of marijuana plants in starter trays similar to those found on the USFS property. When no one responded to Agent Woodall's knock on the cabin door, Agent Woodall returned to the tree line.

Because agents had approached the cabin after hiking from USFS property to the tree line on a footpath, they did not know the address of the cabin or how to reach it by car. Following the driveway, agents reached a locked gate at the intersection of the driveway and Youngblood Drive. A gap existed next to the gate that led the agents to believe the gate was intended to restrict access by large

3

vehicles. Agents recalled no signage on or near the gate.

A state-issued warrant was obtained for the cabin. Agents continued surveillance of the property and commenced execution of the warrant only after some activity was observed on the property in the vicinity of the marijuana plants.

The district court determined that Cox had no legitimate expectation of privacy in the Youngblood Drive property: the cabin was not titled in his name, lacked indicia of use, and housed no personal or business items. The district court determined further that, even if Cox could show a legitimate expectation of privacy sufficient to support a Fourth Amendment challenge, no entry to the property violated his Fourth Amendment rights. We agree.

As Cox concedes, the surveillance point from which the footpath leading to the cabin was observed did not fall within the curtilage of the cabin. See United States v. Hatch, 931 F.2d 1478, 1480 (11th Cir. 1991) ("the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields.") (citation omitted). Cox argues instead that the area along the footpath leading to the front of the cabin -- from which marijuana starter plants were in plain view -- is within the protected curtilage of the cabin such that Agent Woodall's observations as he approached the cabin violated his rights and tainted the warrant that issued to search the cabin.

4

To establish a legitimate expectation of privacy, a person must establish a subjective expectation of privacy that society recognizes as legitimate. See United States v. Smith, 459 F.3d 1276, 1290 n.14 (11th Cir. 2006). The Fourth Amendment's proscriptions are "not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006). "Absent express orders from the person in possession, an officer may walk up the steps and knock on the front door of any man's 'castle,' with the honest intent of asking questions of the occupant thereof. Thus, officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." Id. (internal quotations and citations omitted).

We see no error in the district court's factual findings and conclusion of law that Agent Woodall's approach to the cabin to conduct a "knock and talk" violated no reasonable expectation of privacy. His plain view observations while properly on the property constitute no constitutional violation; and inclusion of these observations in the warrant affidavit do not taint the validity of the warrant issued to search the cabin.

Cox also argues that the district court erred by admitting his two prior

5

marijuana trafficking convictions in violation of Fed.R.Evid. 404(b). We review the district court's Rule 404(b) rulings for an abuse of discretion. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008). Under Rule 404(b), evidence of other crimes is not admissible to show proof of bad character. But it may be admissible to prove motive, knowledge, or intent as long as the evidence is relevant to an issue other than defendant's character and the risk of undue prejudice from the evidence does not outweigh substantially its probative value. See Fed.R.Evid. 404(b); see also Fed.R.Evid. 403.

Here, Cox's intent was at issue because he pleaded not guilty and denied participating in the conspiracy. United States v. Kopituk, 690 F.2d 1289, 1334 (11th Cir. 1982) (concluding that, "in the context of a conspiracy case, the mere entry of a not guilty plea sufficiently raises the issue of intent to justify the admissibility of extrinsic offense evidence"). And "[e]vidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." United States v. Cardenas, 895 F.2d 1338, 1344 (11th Cir. 1990).

Cox argues that the prior trafficking convictions were dissimilar to the manufacturing or growing of marijuana and, thus, were unduly prejudicial. But the prior convictions involved large amounts of drugs just like the instant offense; and

6

the lack of similarity between the convictions does not render the evidence substantially more prejudicial than probative. See United States v. Delgado, 56 F.3d 1357, 1366 (11th Cir. 1995) (rejecting the argument that the lack of similarity between a large-scale drug conspiracy and a comparatively smaller, one-time drug purchase from an undercover law enforcement officer made evidence subject to Rule 403 exclusion). Because Cox's prior drug convictions were highly probative of intent and not subject to exclusion under Rule 403, the district court abused no discretion in admitting them.

Cox also challenges the district court's admission of Special Agent Russell Arthur as an expert witness under Fed.R.Evid. 702. He maintains that Arthur's testimony was unreliable, speculative, and unhelpful to the jury.[1] We review a district court's ruling on the admissibility of expert testimony for an abuse of discretion and we "defer to the district court's ruling unless it is manifestly erroneous." United States v. Douglas, 489 F.3d 1117, 1124 (11th Cir. 2007). Expert testimony must be based on reliable methodology and must be helpful to the jury. See Fed.R.Evid. 702; United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). The trial judge is responsible for ensuring that an expert's testimony is both reliable and relevant. Daubert v. Merrell Dow Pharms., Inc., 113 S.Ct. 2786,

---

[1]Cox does not challenge that Arthur was qualified to testify as an expert in the field of outdoor marijuana field manufacturing.

7

2795 (1993).

Here, evidence showed that Arthur had worked with the USFS for 25 years, received specialized training in outdoor marijuana grow operations, participated in a thousand investigations involving marijuana grow operations, and interviewed over 50 people associated with marijuana grow operations.  Based on Arthur's extensive experience with this subject, we cannot say that the district court's ruling allowing Arthur to testify about the nature of marijuana grow operations was manifestly erroneous.  See  United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (there is a "well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business") (internal quotations omitted).  Moreover, Arthur's testimony assisted the jury in assessing the role played by the co-conspirators in the marijuana grow operation, the connection between prior marijuana trafficking and marijuana cultivation, and the role typically played by the manager of a marijuana grow operation, which was outside the common knowledge of the jury.[2]

Now we address Cox's challenge to the sufficiency of the evidence.

---

[2]Contrary to Cox's appellate argument, the record does not show that the government questioned Arthur specifically about Cox's alleged involvement in this case; instead, Arthur testified in generalities and interpreted the evidence collected by investigative agents.

Because Cox failed to move for a judgment of acquittal at the close of all the evidence, "we will reverse his conviction[] only to prevent a manifest miscarriage of justice." United States v. Milkintas, 470 F.3d 1339, 1343 (11th Cir. 2006). "This standard requires a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (internal quotation omitted).

To convict Cox of conspiracy to manufacture marijuana, the government had to "prove beyond a reasonable doubt that there existed an agreement between two or more persons to [manufacture marijuana] and that [Cox] knowingly and voluntarily participated in that agreement." United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006). The government need not prove that Cox "knew all of the detail or participated in every aspect of the conspiracy," but instead "must only prove that [he] knew the essential nature of the conspiracy." United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005). "Once the existence of a conspiracy is established, only slight evidence is necessary to connect a particular defendant to the conspiracy." Id.

Here, Cox did not dispute that a conspiracy to manufacture marijuana existed between the Hispanic workers he hired to do landscaping work on his father's property. He merely argued that the workers committed the offense

9

without his knowledge. Thus, only slight evidence was needed to connect Cox to the conspiracy. See id.

And evidence showed that Cox (1) took his business partner to his father's property and told her that he had hired workers to grow marijuana and that his landscaping business was a cover[3]; (2) purchased the truck used by the workers on the property using a false name; (3) occasionally visited his father's property, where the marijuana plants were in plain view; and (4) fled the day of his initial appearance to avoid going to prison and admitted to Arizona police when he later was pulled over for a traffic violation that they "had caught a big fish." See United States v. Wright, 392 F.3d 1269, 1277-78 (11th Cir. 2004) (explaining that "a defendant's flight, escape, resistance to arrest, concealment, assumption of a false name, and related conduct [is] admissible evidence of consciousness of guilt, and thus of guilt itself"). Based on this record, the evidence was not so tenuous that Cox's conviction was shocking.[4]

---

[3]While Cox argues that his partner's testimony was not credible, credibility determinations are within the exclusive province of the jury and may not be revisited unless the testimony is "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997).

[4]Cox also argues that the evidence failed to support the jury's special finding that the conspiracy involved over 1000 marijuana plants because evidence did not connect him to three grow sites located off of his father's property. But USFS agents testified that the three additional grow sites (which contained 594 plants) contained similar marijuana plants in black trays and starter cups and empty bags of potting soil as found at the initial site and on the Cox property, which contained 724 plants.

AFFIRMED.