[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-12172
Non-Argument Calendar

————————————————

D.C. Docket No. 3:18-cr-00083-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LYTLE STEPHEN, JR.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(August 6, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Lytle Stephen, Jr. appeals his convictions for possession of a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.  On appeal, he argues that the area of his driveway where he was detained and searched was part of his home's curtilage, and law enforcement lacked any legal justification to enter the curtilage of his home without a warrant.  We affirm.

## I.

On the night of April 5, 2018, Escambia County sheriff's deputies investigating a burglary learned that a suspect in the burglary lived in a house on a certain street corner in a high-crime area.  The victim of the burglary told them that the suspect drove a green truck that would be parked at the suspect's house.  At around 11:40 that night, deputies Brett McCormack, Gregory Goult, and Suzanne Pollock drove to the street corner and observed a green truck parked in front of a house there.

The deputies drove past the green truck and circled back to get the truck's tag number.  As they approached the second time, a man standing near the end of the driveway of the home called out to them, asking if they were lost.  The deputies stopped and got out to talk to the man.  As they walked toward him, they smelled a strong odor of marijuana wafting from a car parked in the driveway near the street.  Both front doors of the car were open and two people, Cody and Cassandra

2

McFarland, were sitting in the front seats. Stephen was sitting alone in the back seat of the car. He started to get out of the rear passenger-side door as the deputies approached, but upon seeing the police, he immediately got back in the car and shut the door.

The deputies ordered everyone to get out of the car, which they did. According to the deputies, Stephen was behaving strangely. He held what appeared to be a server apron clutched to his chest, and he kept trying to walk around the deputies toward the house. He kept saying that he wasn't doing anything wrong and that he wanted to go inside. The deputies repeatedly told Stephen that he was not free to leave, but he continued to try to edge past them.

The deputies spoke to the McFarlands, who told them that Stephen had been smoking the marijuana in the back seat of the car when the officers arrived. Deputy McCormack began searching the car for the marijuana, and Stephen tried to walk around the other side of the car past Deputy Goult. Deputy Goult again explained that Stephen was not free to leave, but Stephen continued trying to walk around him. At that point, Deputy Goult handcuffed Stephen.

After he had been handcuffed, Stephen showed the deputies where to find the marijuana. Deputy McCormack looked where Stephen indicated and found a marijuana cigar on the floorboard behind the driver's seat. Once the officers found the marijuana, they arrested Stephen and Deputy Goult searched him incident to

3

his arrest.  The search of Stephen's person revealed a handgun in each jacket pocket, 64 baggies of heroin (totaling approximately 5.4 grams), 29 tablets that Stephen referred to as Xanax bars, and $1,089 in cash.  A federal grand jury later charged Stephen with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (Count 1); possession of a firearm in furtherance of a drug trafficking crime, in violation of  18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3).

Stephen filed a motion to suppress the evidence found during the search of his person, arguing in part that the area the deputies entered when they confronted him about the marijuana smell was part of the home's curtilage, and was, therefore, off limits to law enforcement in the absence of a warrant or exigent circumstances. At a hearing on his motion, Stephen testified that Deputy Goult had searched him, without his consent, almost immediately when the deputies first approached the car—not after Deputy McCormack found the marijuana, as the officers reported. He also testified that the car had been parked "a little bit" closer to the house than the deputies indicated in their testimony.  He denied showing the deputies where to find the marijuana and said that they found it in the front seat where the McFarlands had been sitting, not in the back as the deputies testified.

4

The district court resolved the conflicting testimony in favor of the officers' version of events and denied Stephen's motion to suppress. The court concluded that the parked car was not in the curtilage of the home and that the smell of burnt marijuana created a reasonable suspicion of criminal activity that justified Stephen's detention. Once the deputies found the marijuana (with Stephen's assistance), they had probable cause to arrest him and could legally search him incident to the arrest.

Stephen pleaded guilty to a lesser-included drug possession offense on Count 1 and guilty as charged on Counts 2 and 3 of the indictment, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Stephen to 15 days' imprisonment on Counts 1 and 3 and 60 months' imprisonment on Count 2, followed by a total of three years of supervised release. Stephen now appeals.

## II.

On appeal, Stephen challenges the district court's ruling on his motion to suppress, arguing that the court erred in determining that the area of the driveway where the deputies detained and searched him was not curtilage. "Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

5

We construe all facts in the light most favorable to the prevailing party below—here, the government. *Id.* The district court's determination of what is curtilage is a finding of fact that we review for clear error. *United States v. Hatch*, 931 F.2d 1478, 1480 (11th Cir. 1991).

## III.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The constitutional protection of people in their houses extends to the "curtilage" of the home, which is "the area 'immediately surrounding and associated with the home.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). Subject to a few exceptions, the Fourth Amendment prohibits law enforcement from entering a home or its curtilage to conduct a search without a warrant. *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015).

The curtilage may include the portion of a driveway that is "adjacent to the home and 'to which the activity of home life extends.'" *Collins*, 138 S. Ct. at 1671 (citation omitted). In *Collins*, for example, the Supreme Court concluded that an area at the top of a driveway adjacent to the home was curtilage where the area was located behind the front perimeter of the house, was enclosed on two sides by a brick wall and on the third side by the house, had direct access to the house itself

6

through a door in the side of the house that formed part of the enclosure, and was not part of the path that a visitor would take from the street to the front door of the house. *Id.* at 1670–71. "So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." *Id.* at 1675.

Questions about whether an area is curtilage "should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn,* 480 U.S. 294, 301 (1987). The "central component of this inquiry" is "whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life'"; in other words, "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id*. at 300, 301 (citation omitted).

We find no clear error in the district court's application of these factors to determine that the portion of the driveway where Stephen was detained and searched was not part of the home's curtilage. Based on photographs of the home and driveway attached to Stephen's motion to suppress, the house was a one-story

duplex with an unfenced front yard and a single driveway. The driveway ran in a straight line from the street to the wall of the house between the two front doors and appeared to serve both units of the duplex. The car in which Stephen sat was parked close to the street, but because the driveway was short (about three or four car lengths long), the car was also not far from the house. The first *Dunn* factor therefore provides some support for Stephen's argument.

But the remaining factors weigh against him. The driveway was not gated, covered, enclosed, or partly enclosed. It did not appear that any portion of the driveway was used as a porch or patio or otherwise served as an extension of Stephen's home—to the contrary, the driveway appeared to be a common area used by the residents of both units solely for parking cars. And the occupants of the home had made no effort to conceal the driveway from passersby. Furthermore, the driveway formed part of the path that visitors would naturally take to walk to the front door—a pathway led from the upper end of the driveway to the front porch. In short, nothing in the record indicates that the deputies entered an area harboring the "intimate activity associated with the sanctity of a man's home and the privacies of life" when they approached Stephen in his driveway.

Because the deputies did not enter the curtilage of Stephen's home when they confronted him in his driveway, they did not need a warrant to approach and

speak to him.  *See, e.g.*, *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011).  Additionally, the district court did not err in finding that the deputies had reasonable suspicion of criminal activity justifying their initial detention of Stephen and the McFarlands while they asked about the marijuana they smelled. As we have said before, "the smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010).  And Stephen's "nervous, evasive behavior" in abruptly getting back into the car and shutting the door after he saw the deputies approaching was an additional factor making the deputies' suspicion of Stephen objectively reasonable.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Once Stephen disclosed to the deputies the location of the marijuana cigar, they had a "reasonable belief" that he "had committed or was committing a crime," establishing probable cause to arrest him.[1]  *United States v. Mancilla-Ibarra*, 947 F.3d 1343, 1349 (11th Cir. 2020) (citation omitted).  And Deputy Goult was authorized to search Stephen for weapons or evidence incident to his lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973).

---

[1] To the extent that Stephen challenges the district court's determination that Stephen's detention and arrest occurred as described by the deputies, we find no reversible error in the court's decision to credit the deputies' account of events over Stephen's.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

For the reasons stated, we conclude that the district court did not err in denying Stephen's motion to suppress evidence, and we therefore affirm his convictions and sentences.

**AFFIRMED.**